## National Bank of Catasauqua *v.* North, Appellant.

|160 303|
|173 329|

| 160 | 303 |
| 29 SC | 226 |

| 160 | 303 |
| 219 | 460 |

*Fixtures—Annexation to realty—Intention.*

As to all articles not so intimately connected with the freehold as to become essentially a part of it, the intention, not the mere physical fact of their connection with the realty, is the criterion of annexation. But the "intention" which thus becomes controlling is not the secret design which may dwell in a party's mind and as to whose existence he alone can speak, but that "intention" which was either expressly declared by the parties competent to make it the governing rule, or which flows, patent to all, from the nature and character of the act, the clear purpose to be served, the manifest relation which the articles bear to the realty, and the visible consequences of their severance upon the proper and obvious use of it.

*Fixtures—Steam heating apparatus.*

Radiators and valves connecting with steam heating apparatus are not fixtures attached to the realty. They are exactly analogous to gas fixtures and are severable from the real estate.

Argued March 1, 1894.   Appeal, No. 311, Jan. T., 1894, by defendant, Frederic A. North, from judgment of C. P. Berks Co., June T., 1893, No. 23, for plaintiff, on trial by court without a jury.   Before Sterrett, C. J., Green, Williams, Mc-Collum and Dean, JJ.   Affirmed.

Detinue for steam heating pipes, radiators and valves.

The case was tried without a jury under the act of 1874.

The following opinion was filed by Endlich, J.:

"1. The house No. 217 North Fifth street, from the time of its erection in 1873, was, and still is, a private dwelling house.

"2. In 1887, said house was the property of Isaac McHose, subject to a mortgage held by the Provident Life & Trust Co.

"3. In the fall of that year, said McHose abandoned the former method of heating his house by means of a furnace and substituted in place thereof that of steam heating.   For that purpose, he, at a cost of $509, introduced in said house an apparatus, the supply of steam for circulation in which was obtained by connection of said apparatus with the pipes of the Reading Steam Heat & Power Co., laid in said Fifth street, and conducting the steam from a central plant operated by said company to houses of its customers, upon the same principle as gas is furnished to houses by gas companies.

"4. Said apparatus, apart from the pipe connecting it with the main in the street, consists of the following:

" (a) In the cellar, (1st) of service pipes covered with asbestos, fire-proof, nonconducting paper, fastened by hooks or hangers overhead to the joists, and (2d) a regulator trap.   Both the latter and the said pipes can be removed without injury to the building.

" (b) Between the several stories of the house above the cellar, (1st) of certain pipes called risers, which are inserted in what formerly were the air flues from the heater, and the purpose of which is to carry the steam to the upper floors of the house; and (2d) branching out from these risers, pipes laid under the floors of each story distributing the steam to the various rooms and radiators.   The insertion of the risers in the tin flues and the necessary cutting of the latter to connect the former with the distributing pipes destroyed the usefulness of the flues for the purpose for which they were originally put in,

viz., as carriers of the heated air from the furnace, and thereby rendered the furnace itself useless as a means for heating the house, but said risers may be taken out and replaced without injury to the building. The distributing pipes cannot be taken out without tearing up floors, etc. (These latter pipes were not included in the levy or sale, and are not claimed by the plaintiff in this suit.)

" (*c*) In the various rooms, of radiators made up of and divisible into sections, not fastened to, but standing upon the floor, screwed on to the distributing pipes, and having attached to them (1st) valves by means of which the steam may be turned off from and into the radiators, and its flow within them regulated, and (2d) small air valves for the expulsion of cold air accumulating in the radiators. The radiators, with the valves, are readily removable, without injury to the building, by simply unscrewing them from the distributing pipes. Their removal, however, renders the whole system, or apparatus, useless for the time being.

" [5. At the time when he introduced this system into said house, said McHose, within himself, intended that it should permanently take the place of the former method of heating, and that every portion of it should be part of the realty; but he gave no expression to this intention to any one interested in the apparatus or in the said house.] [1]

" 6. The purpose and object to be served by the introduction of the steam-heating apparatus into his house by said McHose, was to further the convenience and comfort of its inmates, the former method of heating by furnace having proved inadequate and the furnace showing signs of wearing out.

" 7. On June 14, 1892, plaintiff, in a suit to No. 71, June term, 1892, obtained a judgment for $4,382.36 against said McHose for want of an affidavit of defence, and thereupon, on Sept. 8, 1892, issued a fi. fa. to No. 4, Oct. term, 1892, E. D., under which, on Sept. 10, 1892, a levy was made, inter alia, upon 1 radiator, 18 sections; 2 radiators, 15 sections; 1 radiator, 32 sections; 2 radiators, 22 sections; 1 radiator, 20 sections; 5 radiators, 10 and 12 sections; supply pipes — said McHose being present at the levy and making no objection thereto.

" [8. On Oct. 7, 1892, under the above levy, said McHose being present, pointing out the various radiators, and making

no objection, the following articles, inter alia, were sold to the plaintiff : 3 radiators, $20.00 ; 1 radiator, $5.00 ; 2 radiators, $2.00 ; 1 radiator (and lamps), $1.00 ; (two lamps), radiators (and fixtures), $5.00 ; radiators in two rooms, $5.00 ; pipes in cellar, $5.00.] [2]

" 9. On Oct. 15, 1892, upon levari facias issued Sept. 22, 1892, upon the mortgage of the Provident Life & Trust Co., the real estate, No. 217 North Fifth street, was sold to Hugh M. North, the landlord of the defendant, the deed to him being acknowledged on Oct. 22, 1892.

" 10. At said sale notice was given by counsel for plaintiff that, inter alia, ' the steam-heat fixtures ' in said house were the property of the plaintiff, having been purchased by it at the sheriff's sale of Oct. 7, 1892.

" 11. About the beginning of May, 1893, said McHose vacated said property, defendant moving into it. Up to that time no attempt had been made to remove any of said articles. Demand therefor was made upon the defendant on May 5, 1893, which was not complied with. Demand was also made upon his landlord.

" 12. The value on May 5, 1893, of the entire steam-heating apparatus in the house No. 217 North Fifth street, removed, was $125, its original cost in place having been $509. The value of the pipes, trap, regulator and valve in cellar, originally $35.00, was, at the same ratio of depreciation, at the same time $26.33. The value of the radiators (with the valves attached thereto) levied upon on Sept. 10, and sold to plaintiff on Oct. 7, 1892, as separated and removed from the house was, on that date, $98.62. The interest thereon May 5 to Dec. 4, 1893, is $3.43.

" Upon the basis of the foregoing facts and as applicable to them, I make the following

CONCLUSIONS OF LAW.

" [1. Whatever secret intention said McHose had in 1877 to annex the entire steam-heating apparatus in the house No. 217 North Fifth street, including the twelve radiators and the valves attached thereto, to the realty and make it part of the same, must be deemed to have been abandoned by him, so far as the said twelve radiators and the valves attached thereto are concerned, and as against this plaintiff, by the acts and silence of

said McHose at the levy and sale, and he must be deemed thereby to have consented to the severance of said twelve radiators and valves attached thereto from the remainder of the apparatus.] [3]

" [2. Neither the mortgagee nor the purchaser at the sale of Oct. 15, 1892, under the mortgage, had or has any right to insist upon having said twelve radiators and valves attached thereto treated as permanently annexed to, or as part of, the realty.] [4]

" [3. Said twelve radiators and valves attached thereto, levied upon on Sept. 10th and sold to plaintiff on Oct. 7, 1892, never were part of the realty, but remained personalty severable from the realty, and by said levy and sale they became the property of the plaintiff, who thereupon was entitled to the possession of them.] [5]

" 4. The pipes in the cellar, with the valves attached to them, the trap and regulator, the risers and distributing pipes, are so permanently annexed to and part of the realty as not to be subject to levy and sale as personalty separate from the same, and no title to or right of possession of any of them was acquired by the plaintiff by virtue of said levy and sale.

" [5. The plaintiff is entitled in this suit to recover from the defendant the said twelve radiators and the valves attached thereto, or, if he cannot have them, the value thereof on May 5, 1893, with interest thereon from said date, viz., $102.05, and his full cost of suit.] [6]

" It is proper that I should give my reasons for the legal conclusions just stated, especially as the principal question raised in this case seems to be a new one in our law.

The excellent brief submitted by the learned counsel for the plaintiff relieves me of the burden of discussing at length the preliminary question as to what in general, under our law, constitutes fixtures that may, or such as may not, be sold on a fi. fa. separate and apart from the realty. The doctrine of the decisions cited by him in Voorhis v. Freeman, 2 W. & S. 116; Pyle v. Pennock, Id. 390; Christian v. Dripps, 28 Pa. 271; Hill v. Sewald, 53 Id. 271; Meigs's Ap., 62 Id. 28; Patterson v. Delaware Co., 70 Id. 381; Seeger v. Pettit, 77 Id. 437; Bldg. Assn. v. Berger, 99 Id. 320; Benedict v. Marsh, 127 Id. 309; McLean v. Palmer, 2 Kulp, 349, to which may be added Ege v. Kille, 84 Pa. 333; Morris' Ap., 88 Id. 368; Electric Co. v.

Goodman, 129 Id. 206 ; Vail v. Weaver, 132 Id. 363, fully es-tablishes the rule that, as to all articles not so intimately con-nected with the freehold as to become essentially a part of it, the intention, not the mere physical fact of their connection with the realty, is the criterion of annexation. But those de-cisions also unmistakably show that the 'intention,' which thus becomes controlling, is not the secret design which may dwell in a party's mind and as to whose existence he alone can speak, but that 'intention' which was either expressly declared by the parties competent to make it the governing rule, or which flows, patent to all, from the nature and character of the act, the clear purpose to be served, the manifest relation which the articles bear to the realty, and the visible consequences of their severance upon the proper and obvious use of it. This meaning of the word is particularly emphasized in Bldg. Assn. v. Berger, supra, at p. 324. It is most unequivocally stated by KNOWLTON, J., in Hopewell Mills v. Sav. Bank, 150 Mass. 519, as follows : ' The intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act. It is an intention which settles, not merely his own rights, but the rights of others who have or may acquire interests in the property. They cannot know his secret purpose, and their rights depend, not upon that, but upon the inferences to be drawn from what is external and visible.'

" I can find no case in which the declaration of him who placed the articles where they were, that he thereby intended, secretly within himself, to make them part of the realty, has been given any controlling effect. The decision in Benedict v. Marsh, supra, does not suggest such a departure from the ordinary rule as to transactions between men, that one's undisclosed intent is not to affect the other : Spencer v. Colt, 89 Pa. 314. In Bene-dict v. Marsh the contest was between the vendee of real estate as part of which he claimed a certain steam sawmill which he himself had originally sold to the owner of the land, and which the latter had transferred to the defendant. The case turned wholly upon the question of the intended permanency of the sawmill structure, and the testimony was conflicting on that point. In these circumstances, it was held permissible to ask the purchaser of the sawmill as to what he told the plaintiff, at the time of the purchase, concerning his purpose and intention

in the premises, and in connection therewith what he said on the same subject to others. This holding is entirely consistent with the rule as I understand and have endeavored to formulate it. Applying this rule here, it is obvious that the secret 'intention,' which doubtless existed in Mr. McHose's mind when he put the steam-heating apparatus into his house (see findings of fact 5), is not controlling of this case (even had he not done that which requires the inference that, as against this plaintiff, he had abandoned it subsequently : see findings of fact 7, 8), and that the question of realty or not realty depends wholly upon what the facts found show concerning the nature, object, purpose, and relation of the improvement in and to the property regarded as a dwelling house. No doubt this question is primarily and usually one of mixed law and fact : Campbell v. O'Neill, 64 Pa. 290 ; Hopewell Mills v. Sav. Bank, supra ; and therefore for the jury : Seeger v. Pettit, Bldg. Ass'n v. Berger, McLean v. Palmer, supra. 'But the principal facts when stated are often such as will permit no other presumption than one of law :' Hopewell Mills v. Sav. Bank, supra ; and see Hill v. Sewald, supra ; Bldg. Ass'n v. Berger, supra, p. 324. The matter of Mr. McHose's secret intention being out of the way, this is such a case.

" That a steam-heating apparatus is indispensable to the occupancy and enjoyment of a dwelling house as such cannot be pretended. That it is a convenience whose presence may enhance the rental value and the comfort of a house may be very true : See Jarechi v. Philh. Soc'y, 79 Pa. 403, 405. That, as a means of heating dwellings, it will in a short time be superseded by something superior to it, seems but a reasonable expectation. Of no such appliances can it be said that they are of such a nature or character as to be necessary to carry out the obvious purpose for which the building was erected, permanently to increase its value for occupation and use, or to constitute lasting accessions to the property. The same considerations of personal comfort, convenience and safety that call for their adoption at one time will require the discarding of them later on. So far as they consist of movable articles merely standing upon the floors, though screwed to pipes, in walls or under floors, their relation to the realty itself is not different from that of any other sort of detachable heating ap-

paratus, from a portable furnace down to a gas stove, and the consequences of their severance from the realty are precisely the same in kind.   There is, in a word, nothing in the act of introducing such articles into a dwelling-house, and nothing in their nature, object, purpose, or relation to the house, which can give rise to an inference that they were put there to be a part of the realty, or to increase the security of its mortgagee. There is certainly no more reason for indulging such a supposition with respect to such than with respect to gas fixtures. Steam heat is furnished to houses by steam heating companies in the same way in which gas is furnished by gas companies. Indeed, the use of gas is far more general in dwelling houses, and it is far more of a necessity to their enjoyment and occupation as such, than steam heat.   Moreover, like in the apparatus here in question, so where gas is used, it is introduced by means of service pipes entering the cellar, vertical pipes conducting it to the upper floors, and distributing pipes carrying it to the various rooms, some of which pipes are exposed, others imbedded in the walls, others laid under the floors. Again, analogously to the proven relation of the radiators and the valves attached to them to the remainder of the steam-heating apparatus, the removal of the brackets and chandeliers, with their burners and stop-cocks, renders the entire system of gas pipes in a house, from which they are detached, useless for the time : See Sewell v. Angerstein, 18 L. T. (N. S.) 300, per WILLES, J.   But gas fixtures are very uniformly held to be severable from the realty, whether the question of their annexation to it arises between landlord and tenant, vendor and vendee, or purchaser of the personalty, and mortgagee of the realty: Ewell, Fixtures, pp. 93, note 299, 436, note; Vaughen v. Haldeman, 33 Pa. 522; Jarechi v. Philh. Soc., 79 Id. 403, Heysham v. Dettre, 89 Id. 506; Seeger v. Pettit, supra; Lawrence v. Kemp., 1 Duer (N. Y.) 363; Shaw v. Lenke, 1 Daly (N. Y.) 487; Manning v. Ogden, 54 N. Y. S. R. 113; Kirchman v. Lapp, 46 N. Y. S. R. 687; McKeage v. Ins. Co., 81 N. Y. 38; Hays v. Doane, 11 N. J. Eq. 84; Guthrie v. Jones, 108 Mass. 191; Towne v. Fiske, 127 Id. 125; Montague v. Dent, 10 Rich. (S. C.) 135; the only authority to the contrary in this country that I am acquainted with being Johnson v. Wiseman, 4 Metc. (Ky.) 357.   Of course, express stipulation may

make them pass with the realty : Jarechi v. Philh. Soc'y, supra ; Heysham v. Dettre, supra ; Fratt v. Whittier, 58 Cal. 126 ; Sewell v. Angerstein, supra ; or an intent to do so may be so clear from the attending circumstances and expressions as to have the same effect : Ewell, Fixt., p. 300 ; Funk v. Brigaldi, 4 Daly (N. Y.) 359 ; Central etc. Co. v. Hotel Co., (Super. Ct. Cinc.) 26 Ohio L. J. 149. But in the absence of such an element, the rule as above stated seems very well settled. In this connection, however, it must not be overlooked what is meant by gas fixtures. There is a clear distinction, pointed out in Vaughen v. Haldeman, supra, at 523, reiterated in Jarechi v. Philh. Soc'y, supra, at p. 408, and recognized in Ewell, Fixt., p. 299, and cases there cited, between gas fittings and gas fixtures—the former term including all the piping down to the points of opening where chandeliers, brackets, etc., used for lighting are designed to be attached, the latter only covering those attachments. It is these exclusively to which the rule I have given applies. The analogy between the arrangements for lighting dwelling houses with gas, and those for heating such with steam, seems to me to be so complete that this distinction must also obtain as to the latter, under the decisions of this state. For this reason I must regard the case of Jenkins v. Gething, 2 John. & H. 520, cited in Ewell, Fixt., p. 129, note, as inapplicable here, and decide that the only portions of a steam-heating apparatus in a dwelling house that do not ordinarily become part of it in such a way as to prevent their being separated as personalty from the real estate, are the radiators with the valves attached to them. Whilst the traps, regulators, service and distributing pipes, risers, and the valves belonging to them may fairly be considered as necessary to the completion of a modern dwelling house where the facilities for steam heating exist, and must, in the nature of things, be substantially the same in every case, varying only in dimensions ; the radiators with their valves are put up in more or less expensive style, according to the taste and means of the person who intends to occupy the house, or according to the purpose for which it may be designed, as a dwelling for his own family, or as a house to be rented to others. Hence upon grounds precisely analogous to those pointed out in Jarechi v. Philh. Society, ubi supra, they and they alone are not to be

regarded as intended to be annexed to the realty. Of course, applying these principles to the facts of this case, the radiators here in controversy, being personal property, never became subject to the Provident, etc. Co.'s mortgage; the plaintiff's purchase of them, with the knowledge and consent of the owner of both them and the house, gave him a good title even before actual severance: Mitchell v. Freedley, 10 Pa. 198; and the purchaser of the realty at the sale of Oct. 15, 1892, with notice of plaintiff's claim of title, cannot complain.

"It follows that the levy of Sept. 10, 1892, was good and effectual as to them, and nothing else; that by the sale of Oct. 7th the plaintiff acquired title to them and nothing else; and that he is entitled, in this suit, to recover for them and nothing else. There being no special damages laid in the declaration (see Schofield v. Ferrers, 46 Pa. 438), or proven, interest upon the sum representing the value of the articles detained, from the time when their detention became unlawful, May 5, 1893, is the proper measure of damages for such detention: McCabe v. Morehead, 1 W. & S. 513."

Exceptions were dismissed and judgment entered for plaintiff.

*Errors assigned* were (1–6) dismissal of exceptions as above, quoting them, and (7) entry of judgment.

*Henry A. Muhlenberg, A. K. Stauffer* with him, for appellant, cited: Hill v. Sewald, 53 Pa. 273; Heysham v. Dettre, 89 Pa. 506; Harmony B. Ass'n v. Berger, 99 Pa. 320; Lyle v. Palmer, 42 Mich. 314; Voorhis v. Freeman, 2 W. & S. 116; Snedeker v. Warring, 12 N. Y. 170; Laflin v. Griffiths, 35 Barb. 58; Winslow v. Ins. Co., 4 Metc. 306; King v. Johnson, 7 Gray, 239; Hoskin v. Woodward, 45 Pa. 42; Wadleigh v. Janvrin, 41 N. H. 503; Hill v. Sewald, 53 Pa. 273; Seeger v. Pettit, 77 Pa. 437; Cross v. Marston, 17 Vt. 533; Vaughen v. Haldeman, 33 Pa. 522; Ins. Co. v. Thackara, 10 W. N. 104; Taylor's Landlord & Tenant, §§ 547, 550; Pyle v. Pennock, 2 W. & S. 390; McLean v. Palmer, 2 Kulp, 349; Ewell on Fixtures, 21; Christian v. Dripps, 28 Pa. 271; Meigs's Ap., 62 Pa. 28; Patterson v. Delaware Co., 70 Pa. 381; Hopewell Mills v. Savings Bank, 150 Mass. 519.

*Horace Roland,* for appellee, cited : Vaughen v. Haldeman, 33 Pa. 522 ; Jarechi v. Philharmonic Society, 79 Pa. 403 ; Heysham v. Dettre, 89 Pa. 506 ; Ins. Co. v. Thackara, 11 W. N. 391 ; Vail v. Weaver, 132 Pa. 363 ; Dimmick v. Cook & Co., 115 Pa. 580 ; Jenkins v. Gethings, 2 J. & H. 520 ; Snedaker v. Warring, 12 N. Y. 178 ; Treadway v. Sharon, 7 Nev. 37 ; Tate v. Blackburn, 48 Miss. 1 ; Buck's Ap., 2 Penny. 327 ; Ewell on Fixtures, 39 ; Burke v. Weiss, 1 Kulp, 310 ; Mitchell v. Freedley, 10 Pa. 196 ; White's Ap., 10 Pa. 254 ; Piper v. Martin, 8 Pa. 207.

PER CURIAM, March 12, 1894 :

By agreement, this case was submitted and tried by the learned judge of the common pleas without the intervention of a jury. The controlling question was whether the radiators and valves attached thereto, levied on and sold by the sheriff to the plaintiff, were ever part of the realty, or remained personalty, and by said sale became the property of the plaintiff.

The first and second specifications, charging error in finding the facts therein recited respectively, are not sustained. Each of these findings was fully warranted by the testimony. The remaining five specifications complain of the conclusions of law therein mentioned. It is unnecessary to consider them in detail. There appears to be no error in either of them. An examination of the record has satisfied us that the learned trial judge was substantially correct in his legal conclusions, as well as in his findings of fact from which they were drawn. His opinion is an ample vindication of the correctness of both·; and, for reasons therein given, we think the judgment should not be reversed.

Judgment affirmed.