# In re WEST.

(District Court, E. D. Pennsylvania. November 4, 1918.)

## No. 5941.

1. BANKRUPTCY ⟨⟩191(1)—BANKRUPTCY OF TENANT—CLAIM FOR RENT.

Where a landlord, before the expiration of the lease of an earlier tenant, who was indebted for rent, demised premises to the bankrupt under a lease providing that it should not affect the former lease, or remedies, for collection of rent, and the bankrupt took over property of the first tenant in the premises, *held*, the landlord's claim for rent against the first tenant could not be asserted against the bankrupt's estate as a priority claim; there being no right to distrain.

2. FIXTURES ⟨⟩15—"TRADE FIXTURES"—REMOVAL.

"Trade fixtures" are those which a tenant places on property to promote the purpose of his occupation and which he may remove during the term.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trade Fixtures.]

3. BANKRUPTCY ⟨⟩138(1)—FIXTURES.

Where a tenant rejected the landlord's proposal that gas fixtures, etc., which the tenant desired, should be installed by tenant and become landlord's property, *held*, that, tenant having installed fixtures which were sold with rest of his property after bankruptcy, landlord could not maintain claim therefor.

In Bankruptcy. In the matter of William West, individually and trading as the William West Company, bankrupt. On petition for review of order allowing claim of landlord for rent. Order reversed, and cause remitted to referee, with instructions. On certificate for review of claim of landlord to fixtures. Order reversed, and claim denied.

Reber & Granger, of Philadelphia, Pa., for petitioner.

Coyle & Keller, of Lancaster, Pa., for landlord.

## On Petition for Review of Order Allowing Claim of Landlord for Rent.

DICKINSON, District Judge. This case presents an unusual fact situation. We have not had the aid of an oral argument, but a perusal of the briefs of argument submitted seem to justify this broad statement of what the situation presented is:

A man by the name of Harry West occupied as tenant certain premises for which he owed rent. He was succeeded in his occupation of the premises by the bankrupt, to whom the owner demised the premises formerly occupied by Harry West. All the rent owing by the bankrupt has been paid, but a balance of $365.73 of the rent due by the first tenant, Harry West, remains unpaid. No distraint was made by the landlord. He presents, however, a claim for rent, which the referee has allowed. The allowance is based, as we understand it, upon the proposition of fact, to paraphrase the finding of the referee, that the bankrupt "took over," not only the premises which had been demised to the former tenant, but also his stock of goods, and that at

the time rent was owing by the former tenant to the landlord, a balance of which still remains unpaid.

The proposition of law is deduced from these facts that, when the bankrupt entered into possession of the premises and "took over" the personal property of the former tenant on the premises, he, to again paraphrase the language of the referee, took this stock subject to "the attendant liabilities," one of which was the right of the landlord to distrain for rent. From these premises the conclusion is drawn that the landlord has the right, not only to participate in the distribution of the assets of the bankrupt estate, but to have accorded to him priority of payment over other creditors.

The line of thought followed is that prior to the adjudication the personal property of the former tenant remaining on the premises was liable to distraint by the landlord, and that after the adjudication "this right to distrain under the law of Pennsylvania was converted into a valid priority claim" under the provisions of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544). Morris v. Parker, 1 Ashm. (Pa.) 187, is cited as an authority sustaining the right of the landlord to distrain.

The loss of the aid of an oral argument is felt, because we have been unable to rid ourselves of the feeling that the foregoing statement, for some reason which has not been disclosed by this record or the briefs of argument, does not adequately present the grounds for the order made by the referee.

[1] As presented, however, it would seem to involve this proposition: Premises are demised to A., who owes rent, and has personal property on the demised premises. This relation of landlord and tenant is dissolved, and the premises are then demised to B., who, under an arrangement made with A., "takes over" the personal property on the premises. An execution then issues against B., and out of the proceeds of sale the landlord may successfully assert priority of payment of rent due by A.

One of the facts upon which this conclusion of law is based, to wit, that there was personal property of the first tenant which came into the possession of the succeeding tenant, is averred not to be a fact properly found to be in the case presented, but, assuming this to be one of the facts in the case, we are unable to accept the proposition as sound. This is, for several reasons, so obvious as not to call even for their statement.

The supporting brief filed on behalf of the landlord seems to plant the right of the landlord upon an agreement of the bankrupt in the lease to him. The lease to the former tenant did not expire until April 1, 1917. The lease to the bankrupt was made before the expiration of this former lease, and the provision referred to was that the lease to the bankrupt should "in no wise affect" the former agreement of lease up to the beginning of the new demise, "nor any of the remedies for the collection of the rent" for the premises occupied by the former tenant. It is, we assume, clear that one of the agreed facts is that the first lease was ended by the agreement of the landlord and tenant, and was succeeded by the new lease, under which the bankrupt became the tenant under a new demise.

The leverage of the whole argument is, of course, upon the proposition of the landlord's right to distrain. To assume, as the argument does, or for the landlord to assert, as he clearly does, a right to have distrained ignores certain features of the situation. One is that the relation of landlord and tenant between the claimant and the predecessor of the bankrupt had been dissolved. What effect had this upon the right of the landlord to distrain? In the second place, the claim of the landlord is now asserted against the property of the bankrupt estate, irrespective of whether it was property which had formerly belonged to the first tenant or not. The argument, in consequence, would seem to assume the right of a landlord to distrain upon the property of his tenant for rent due by a former tenant. The principle is, of course, accepted that a tenant may agree that something shall be rent which otherwise would not be, and the landlord may in consequence have a right to distrain for it.

For illustration, a tenant might agree that water rent or taxes assessed against the demised premises should be paid by the tenant in addition to the rent reserved, and such water charges and taxes should be deemed to be rent and might be distrained for as such. This, however, would be because the tenant had so agreed.

We find no such agreement in this lease. On the contrary, the quoted agreement is restricted and limited in its scope, and is really an expression of the agreement between the landlord and his former tenant that the abrogation of the lease during its term should not affect the liabilities of the tenant up to the time of the beginning of the new lease. Moreover, the whole argument is pivoted upon the proposition that the goods upon the "demised" premises are liable to distraint for rent, although they may be in fact the goods of a stranger.

This general proposition, subject to certain well-known exceptions and limitations, is sound enough; but the application which the argument makes of it again ignores the distinction between "demised" premises and premises which have been demised. It would scarcely be contended that the property of a third person on rented property was liable to be seized and sold in payment of claims of a landlord for rent due him by former tenants, although it were true that the premises on which the property was were the same premises which had been demised to these former tenants.

The foregoing discussion adequately presents the real question involved in this controversy, so far as we have been able to gather it from the briefs submitted. If we have misunderstood the question intended to be presented, we will entertain a motion for a reargument, the application therefor to be made within five days; otherwise the petition for a review is allowed, the order made by the referee is reversed, and the cause remitted to him, with instructions to disallow the claim of the landlord as one entitled to priority of payment.

## On Certificate for Review of Claim of Landlord to Fixtures.

The real question involved in this petition for review is that of the ownership of certain gas and electric fixtures on premises demised to the bankrupt. Gas fixtures of a kind were in the building leased.

It was deemed desirable to replace them with new fixtures. The tenant applied to the landlord to do this. The landlord refused. He, however, suggested to the tenant that he (the tenant) replace the old fixtures with new ones, the latter to become the property of the landlord. This proposition the tenant declined. The parties not being able to reach any agreement, the tenant finally met the situation by taking down the old fixtures, putting in new ones, and laying aside the old fixtures as the property of the landlord. The tenant was afterwards adjudged a bankrupt, and the new fixtures were sold as his property, for which the purchaser paid the sum of $286. The landlord then made claim to the fixtures, which the referee allowed, and made an order upon the trustee to return the purchase price to the purchaser.

We confess to the same feeling of embarrassment felt in the other petition for review in disposing of the question as presented in the printed briefs, because of the uncertainty of our having a grasp of the whole situation as intended to be presented.

[2, 3] All questions affecting fixtures are more or less difficult of answer, because the definite line which determines what the proper answers should be is one often and usually hard to fix. One view universally accepted is presented in the light of the practical situation. The thought is expressed in the term "trade fixtures," and is that whatever a tenant puts upon a property to promote the purpose of his occupation of the premises, he, retaining his ownership therein, may remove during the term. Substantially the same thought is embodied in the expressions, frequently met with, of whether the removal can be made without destruction of or injury to the premises.

The fixtures over which the controversy rages are electric light and gas fixtures. From this general description of it, the impression is received that they belong to the class of fixtures which presumably remain the property of the tenant, if he installs them, without any agreement on his part to make them the property of the landlord.

It is not wholly clear upon what ground as a legal basis the referee has based his order. The general view which he takes of the situation is clear enough. It is that, when the owner of the premises has adequately equipped them for occupation and use for a prescribed purpose, to require him to tear out that equipment and replace it with something different, in deference to the whim or fancy of the tenant, is something which the landlord is not called upon to do, and that "no legal or equitable rule compels the landlord" to do so. This, of course, is clear enough. The further view of the referee that the act of a tenant in replacing fixtures installed by the landlord with new fixtures which may not be acceptable to the succeeding tenant is an act "both unjust and inequitable" to the landlord. This may or may not be so. It depends upon the circumstances. The referee finds the circumstances of this situation not to have justified the tenant. Had the referee made any definite finding of fact with respect to a dedication by the tenant to the landlord, we would be very loath to disturb the finding. He, however, so far forth from so finding, expressly finds that there was no agreement reached by the parties, and

that in fact not only they failed to agree, but that the tenant had refused to so agree.

The referee finds that the landlord was asked to make the substitution. This he refused to do. He made, however, the counter proposition that the tenant might install the new fixtures at his own expense, if he would agree that the new fixtures should become the property of the landlord. This counter proposition, as before stated, the tenant declined.

The referee returns as a fact that the tenant did make the change, and he bases his order upon the proposition that the tenant thereby accepted the conditions laid down by the landlord.

We are unable to accept this view. As the parties could not agree, the tenant had a perfect right to take the position that he could put in the new fixtures and retain his ownership therein. The landlord on his part, of course, had the equal right to claim, and, if he chose, to warn the tenant that, if the change was made, the fixtures would become the property of the landlord. No such warning was given; but, even if it had been, its only effect would have been to have relegated the parties to a decision of what their legal rights were, and the only effect of the assertion of their respective claims of right would have been to have presented for the decision of somebody the conflict of view between them.

The case of Bank v. North, 160 Pa. 303, 28 Atl. 694, which the referee cites in support of the order made by him gives us a very clear statement of the controlling principles involved. These principles, however, it seems to us, lead to a different conclusion from that reached by the referee. A different conclusion is also indicated by the other features of the present fact situation and the practical consequences flowing from the conclusion reached. Had the question been raised in reclamation proceedings, a finding in favor of the landlord would have affected no one other than himself and the bankrupt estate. To present the claim, however, after the fixtures had been sold as part of the bankrupt estate, affects the rights of the purchasers to the fixtures, and otherwise adds to the difficulties of the practical situation.

We see no escape from the conclusion that the order of return of the fixtures should not now be made, and that the petition for a review should be allowed, and the findings and order made by the referee reversed. We grant, however, the same leave granted in the other petition for a review to make an application for a reargument. If no such application is made within five days, the order above indicated is to stand.