## Waltman et al., Executors of Mayer, v. Mayer.

*Wm. Custer Waltman,* for rule; *W. Horace Hepburn, Jr.,* contra.

KUN, J., Jan. 10, 1929.—John B. Mayer died Aug. 18, 1924, and by his will, dated July 15, 1924, John P. Mayer, William Custer Waltman and the Land Title and Trust Company were appointed and qualified as executors and trustees. The widow, Margaret B. Mayer, elected to take against the will and sustained her claim to a one-half interest in the estate by virtue of an adjudication of the Orphans' Court filed June 24, 1925. Apparently, in order to sustain the election, the widow had agreed to sell to Dwight M. Lowrey, by virtue of a paper dated June 18, 1925, her one-half interest in the estate of John B. Mayer, deceased, for the sum of $300,000. It further appeared by another paper or agreement dated the same day that an agreement of further settlement was entered into between the widow, the executors and trustees and Dwight M. Lowrey, attorney-in-fact for all of the heirs, by which the executors and trustees agreed that the widow was entitled to all of the "household furniture and furnishings" in premises No. 4400 North Broad Street, in the City of Philadelphia, State of Pennsylvania, and that the executors and trustees released their claim thereto. The widow being in possession of premises No. 4400 North Broad Street, apparently the domicile of the testator, moved the household furniture therefrom, and in doing so moved two of five mirrors which were in the house. The executors, trustees and Boyd Lee Spahr, contending that the two mirrors in question were part of the freehold and were fixtures and were not part of the "furniture and furnishings" in the premises, and the interest of the widow in them passed by virtue of the agreement to sell the real estate to Dwight M. Lowrey, while the other one-half interest was in them as trustees, brought this suit to recover their value.

To prove their case, plaintiffs called the defendant, Margaret B. Mayer, for cross-examination, who testified that she had taken out two mirrors with the other household furniture, that one was a parlor mantelpiece-mirror hanging on hooks and that it was not nailed into the wall, that it was an old-fashioned mirror—a parlor mantelpiece-mirror. It was also testified that the mirror was lifted off the wall, and it had hooks behind it, and a lug screwed in the wall and the original paper was under it. The other mirror in question was part of a suite of furniture; that when the doctor (decedent) brought his furniture to the house, he had offered to sell the same to the defendant's mother, and he had sold the remaining part of the suite for $50. It also appeared that the decedent had formerly owned another property and when that property was sold he had brought the two mirrors along with him when he moved, and installed them in his new home.

Dr. John P. Mayer, plaintiff executor in the case, stepson of the defendant, testified that his father had formerly owned St. Lukes Hospital and had

moved four mirrors over to the new house, that molding was attached to the mirrors and the molding was nailed in place; that there were no nail-holes in the mirrors and that the wall-paper was in back of the mirrors; that the house was one of a row of houses, and that his father brought the mirrors along with the other furniture. It would appear that in the present case we are dealing with that which would be ordinary personal property, that is to say, when the testator sold his premises and moved the mirrors out of the house which he had formerly occupied after the sale, it would be idle to contend that at that time the mirrors were real estate. The new house was fully plastered and partly papered before the mirrors were installed, and the mirrors were not recessed into the plaster in any way, but were hung, as it were, against the wall and held in place by molding. It would appear that where an article is ordinarily personal property, such as a mirror, in order to make it part of the real estate, it must be attached in such way and be converted to such a character as to necessarily carry out the obvious purpose for which the building was erected and to permanently increase its value for occupation and use. See the case of Meig's Appeal, 62 Pa. 28.

In the case of National Bank of Catasauqua v. North, 160 Pa. 303, it was held that the mere fact that steam radiators were attached to the steam-pipes in the house did not make them part of the house so as to be called fixtures, and that the secret intent of the person bringing ordinary household furniture into the house to make them part of the realty can be given no controlling effect. See, also, the case of Hopewell Mills v. Savings Bank, 150 Mass. 519, to the effect that "the intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act. It is an intention which settles, not merely his own rights, but the rights of others who have or may acquire interests in the property. They cannot know his secret purpose, and their rights depend, not upon that, but upon the inferences to be drawn from what is external and visible."

The court, in National Bank of Catasauqua v. North, supra, further said (page 308) : "But those decisions also unmistakably show that the 'intention' which thus becomes controlling is not the secret design which may dwell in a party's mind and as to whose existence he alone can speak, but that 'intention' which was either expressly declared by the parties competent to make it the governing rule, or which flows, patent to all, from the nature and character of the act, the clear purpose to be served, the manifest relation which the articles bear to the realty, and the visible consequences of their severance upon the proper and obvious use of it."

What the court said in McKeage v. Hanover Fire Ins. Co., 81 N. Y. 38, is particularly pertinent: "The mirrors were not set into the walls, but were put up after the house had been built, being supported in their places by hooks or supports, some of which were fastened with screws to the woodwork and others driven into the walls, and were capable of being easily detached from these supports without interfering with or injuring the walls. All these articles were, in their nature, mere furniture, and, therefore, chattels and not appurtenances to the building." See, also, the case of Cranston, Exec'r, v. Beck, 70 N. J. L. Reps. 145, in which it was held that mirrors, some of them resting on mantels supported at the top by iron spikes driven into the wall, and some of the mirrors resting on slabs supported by brackets, the frames of which were painted in the same style as the woodwork of the room, were personal property and not part of the real estate, regardless of their annexation.

In the case of Leigh v. Taylor, in the House of Lords, App. Cas. 157 (1902), relating to tapestries attached by a molding and fastened to the wall, it was held that "where it is something which, although it may be attached in some form or another to the walls of the house, yet, having regard to the nature of the thing itself and the purpose of its being placed there, is not intended to form part of the realty, but is only a mode of enjoyment of the thing while the person is temporarily there, and is there for the purpose of his or her enjoyment, then it is removable and goes to the executor."

The alleged intention of the decedent with reference to the mirrors in question, as attempted to be brought out in a question put to one of the plaintiffs, a son, was irrelevant in the circumstances. Where the subject-matter is of an equivocal character and the question concerns the intended permanency of it, such as a sawmill structure, inquiry into the intention is pertinent, particularly where it is communicated to the party to the litigation, which was the case in Benedict v. Marsh, 127 Pa. 309. As to a party such as the defendant in this case, whose rights depend upon the effect of a formal written agreement entitling her to "household furniture and furnishings" without reservation of any kind, such an alleged prior intention of the decedent would not be controlling. See quotation from National Bank of Catasauqua v. North, supra, in which Judge Endlich wrote a most illuminating opinion on the subject, which was affirmed in a per curiam opinion of the Supreme Court, pointing out also (page 309) "that the question of realty or not realty depends on what the facts found show concerning the nature, object, purpose and relationship of the improvement in and to the property regarded as a dwelling-house;" pointing out, also, that while this question is primarily and usually one of mixed law and fact, and, therefore, for the jury, the principal facts when stated, are often such as will permit no other presumption than one of law. Such is the instant case.

The plaintiffs failed to meet their burden of proof to show that the two mirrors in question had lost their character as personal property and had become part of the real estate, so that it was incumbent upon the trial judge to enter a non-suit.

The motion to take off the non-suit was properly overruled.