## Thropp's Appeal.

1. Thropp leased to Gagg who erected a frame building, a removable fixture; a constable levied on the building during the term on executions against Gagg; afterwards Gagg, in consideration of a release of rent due, &c., surrendered the term to Thropp who had no knowledge of the levy, and he took possession; the constable sold the building under the execution. *Held*, that the purchaser could not remove the fixtures.

2. By the arrangement Thropp gave up his right to his rent out of the

[Thropp's Appeal.]

execution and Gagg's personal responsibility, which were a consideration for the surrender.

3. If the constable had given the landlord notice of the levy, the arrangement between Thropp and Gagg would not have been effectual against the levy.

4. Such building being primâ facie part of the realty is notice to put a creditor of the tenant upon his inquiry as to its character.

5. Notice of the levy to the landlord was necessary to enable him to protect his rights.

January 19th 1872.    Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.    WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Chester county*: In Equity: Of January Term 1872.

The facts under which the proceedings in this case arose were the following:—

Isaiah Thropp was the owner of a lot of land on which were a mill and other buildings. He leased them for three years from the 1st of March 1829, and Joseph C. Gillingham and Augustus Gagg as assignees of the lessees, went into possession under the lease. The object of the lease was to dig for flint on the land and grind it, paying to Thropp a royalty. In the prosecution of their business, the tenants erected a frame building connecting it with the old mill, and put into both machinery suitable for their business. On the 13th of September 1870, a constable under two executions against the tenants, levied upon the frame building, subject to a prior levy by the sheriff, under an execution issued out of the Court of Common Pleas of Chester county; the constable so returned to the justice who issued the executions. On the 1st of October alias executions were issued by the justice. On the 10th of October, the tenants agreed with Thropp to surrender their lease in consideration of his releasing the rent due him, and permitting the machinery which had been levied on by the sheriff, and which Thropp claimed to be part of the realty, to be sold for the benefit of the creditors of the tenants.

On the 13th of October, the tenants surrendered the lease, and Thropp took possession of the demised premises: on the 18th, the constable under the alias executions sold the frame building to Henry Bronson and Joseph Walker; on the 24th the lease was formally cancelled, and the surrender reduced to writing; Thropp thereafter continued in possession of the premises and buildings.

Bronson and Walker being about removing the frame building by virtue of their purchase at the constable's sale, Thropp filed a bill against them, praying that they might be restrained from removing the building or exercising any acts of ownership over it. An injunction was issued, and subsequently W. B. Waddell, Esq., was appointed master.

He found that the frame building having been erected for the

[Thropp's Appeal.]

purposes of trade was a movable fixture; that the lessees might move it during the term; that the defendants as the purchasers at the constable's sale had also a right to remove it, and that their right had not been affected by the surrender to Thropp.

On the coming in of his report, it was again referred to the master to find whether Thropp knew of the constable's levy when he took the surrender of the lease. He reported that Thropp had no knowledge of the levy at the time of the surrender.

Exceptions were filed to the report.

In the opinion of the court on the report and exceptions, Butler, P. J., said: * * * "But subsequently to the seizure in this case and prior to the sale, the tenant surrendered the lease, and the plaintiff, relying upon the principle that a 'movable fixture' can only be severed during the existence of the term, or while the possession of the tenant continues, argues that no severance can now be allowed. It is certainly true that a tenant cannot enter to remove a fixture after the expiration of his term. Here the term provided for by the lease has not expired. The tenant has surrendered, and the effect upon *him* is the same as if it had. He could not, after quitting the possession in pursuance of this act, return and sever the fixture. But where another has acquired rights in the lease, can the tenant surrender such rights or prejudice them by terminating the contract with the landlord ? Suppose the tenant sub-let the premises, or a part of them, would his subsequent surrender oust the sub-tenant ? Clearly we think it would not (and it seems to have been so decided in Mekinzie Lexington, 4 Dana (Kentucky R.) 129), unless it may be where the landlord is without knowledge of the circumstances and would suffer in consequence of the neglect to inform him. In the case before us, the defendant acquired an interest in the lease by the levy on the building, which, as we have seen, was annexed to the term. Their title, under the sale, dates back to the time of the levy. Had the landlord been aware of the levy, we think it could not be doubted that the surrender which he accepted would not affect the defendants. It is found, however, that he was not aware of it. Still does this, under the circumstances, make any difference ? He is no worse off than if he had known it. The surrender cost him nothing. His tenant was insolvent, and he accepted a return of his property. But again, this is not an interest in the lease acquired by *contract* with the tenant, but by *operation of law.* A lien was created by the levy, and while it existed the tenant could no more dispose of the property than he could of any other chattel under execution. That he could not directly as by a sale, will be admitted, and that he could not *indirectly*, as by a surrender of the lease, to which it was annexed, is, we think, nearly as clear. Not only was a *lien* created by the levy,

[Thropp's Appeal.]

but possession was transferred to the officer and the building in effect severed: Paxton *v.* Steckel, 2 Barr 93; Welsh *v.* Bell, 8 Casey 12; so that when the surrender took place it was subject to the rights thus acquired. The character of the property was such that the officer could not take physical possession and remove it from the tenants' custody, so that if the lien of an execution may in any case be lost by neglect or unnecessary delay in the officer, we see nothing that would justify the suggestion that the lien was lost here." * * *

The court decreed that the plaintiff's bill be dismissed with costs.

The plaintiff appealed to the Supreme Court, and assigned the decree for error.

*J. J. Lewis,* for appellant.—The fixtures of a tenant are parcel of the land until he exercises his right of removal; his right is not an estate, but a privilege: Gibbons on Fixtures 38, 48; Haller *v.* Render, 3 Tyr. 959. The term may be ended by surrender as well as the lapse of its time: Lyde *v.* Russell, 1 B. & Ad. 394. Trover will not lie against owner of land for fixtures: Overton *v.* Williston, 7 Casey 155. A levy does not vest title in the execution-creditor: Watson on Sheriffs 176 (7 L. Lib. 126); Lytle *v.* Mehaffy, 8 Watts 275; Weeton *v.* Woodcock, 7 M. & W. 14.

*W. Darlington,* for appellee.

The opinion of the court was delivered, January 29th 1872, by

AGNEW, J.—Upon a careful examination there appears to be but one question to be decided in this case. Its decision in favor of the appellant renders it unnecessary to determine others raised in the discussion. What was the effect of the surrender of their term by the tenants, Gillingham and Gagg, to Isaiah Thropp, their landlord? A constable had levied on the building in question as a fixture placed on the land by the tenants for the purpose of trade, which they had a right to remove during their term. This levy was made subject to a levy by the sheriff, under a fi. fa., upon the same building, and also upon certain machinery claimed to be the property of the tenants. The master finds that on the 10th day of October, following the levies by the sheriff and constable, the tenants, Gillingham and Gagg, agreed with Thropp, their landlord, to surrender to him the lease in consideration of his releasing them from the payment of the accruing rent, and permitting the machinery levied on by the sheriff, and claimed by Thropp, to belong to the property, to be sold for the benefit of the creditors of Gillingham and Gagg. The effect of this arrangement was that Thropp let go, not merely the personal responsibility of his tenants for the rent, but his right also under the Act of Assembly to claim an apportionment of the rent up to the time of levy, as well as whatever right he might have to detain the machinery

levied on as permanent fixtures. The master also finds as a fact, that at the time of the surrender of the lease, Thropp had no notice of the constable's levy. No suggestion of fraud is made, or that this arrangement was intended to defeat the creditors. So far as the master's report goes, it is obvious that the arrangement was a bonâ fide compromise, by which Thropp suffered a loss in consideration of being permitted to retain on his part the building in question—he let the machinery go which he claimed, and his rent; and the building only was left. The constable made his sale of the building on the 18th of October, and after this arrangement and surrender of the term. Now, admitting that by the prior levy the constable acquired a lien upon the execution, which, if duly prosecuted, would pass the title to the purchaser under the execution, it seems to us the reasoning of the court below on this point is inconclusive. The judge says, their title under the sale dates back to the time of the levy, and thinks it cannot be doubted that the surrender which he accepted would not affect the defendants. It is found, however, that he was not aware of it. Still, does this, under the circumstances (says the judge), make any difference. ? He is no worse off than if he had known it. The surrender cost him nothing. His tenants were insolvent, and he accepted a return of his property. But this is a mistake, the surrender, by the terms upon which it was accepted, cost him his right to follow the property in the hands of the sheriff, that is to say, its proceeds, for his rent. It has been decided conclusively that the landlord has a right to an apportionment of his rent up to the time of the sheriff's levy, and the Act of 16th June 1836 has made no change in this respect : Morgan v. Moody, 6 W. & S. 335; Pazker & Keller's Appeal, 5 Barr 390. And is the extinguishment of the personal liability of Gillingham and Gagg no loss? Because they were then insolvent, it does not follow that the right to pursue them in the future, in case they should acquire property, is of no value. Nor can it be said that the relinquishment of Thropp's claim to the machinery levied on amounted to nothing. No fraud has been found, and we have no right, therefore, to conclude that the claim of title to the machinery was a mere sham. For aught we know, he might have raised a serious question on the terms of the lease of the right of the tenants to remove the machinery. Seeing that the sheriff and those interested in the writs in his hands did not pursue their writs against the building, it is in some measure evidence of their belief that the claim was not wholly unfounded. However this may be taken as a whole, the arrangement not being found to be otherwise than bonâ fide, was such a compromise and relinquishment of right on part of the landlord as constituted a valuable consideration, and entitled him to hold the building against the tenants and those claiming their title, unless it is rendered inope-

[Thropp's Appeal.]

rative by the prior levy by the constable. Had the constable given notice of his levy to the landlord, no doubt the rights of the creditor in the execution would have taken precedence, and prevented the arrangement from being effectual against the execution. Or had the property been susceptible of manucaption and possession, the actual seizure might have been treated as notice in law, sufficient to defeat any arrangement to the prejudice of the execution-creditor. But a building of the kind described in the plaintiff's bill is primâ facie a part of the realty, of which the creditor must take notice, so as to put him on inquiry as to its true character. No manual possession of it can be taken. In view of this, therefore, and in order to give the landlord an opportunity of protecting his rights, whatever they may be, notice to him of the levy was necessary. It was necessary also to prevent him and the execution-creditor from being prejudiced by any arrangements he might find it expedient to make with his tenants for the termination of the lease. If for the advancement of the remedies of creditors, erections constituting parts of the realty are held to be personalty, in favor of trade, and sold under execution, we cannot lose sight of their apparent nature and attachment to the realty, and of the rights of the landlord who may be misled from a want of notice of the creditor's claim. It is, therefore, inequitable to recognise no duty as devolving on those who pursue these remedies. There being no notice to the plaintiff, as landlord, and the sale not having been made until after the termination of the lease by surrender of the term, the right to remove the building was gone, as against the landlord. It was a failure to prosecute the levy with due diligence so as to preserve its lien. The decree dismissing the bill at the costs of the plaintiff is therefore reversed, and a decree ordered to be entered, enjoining the defendants from removing the building described in the plaintiff's bill, from the land of the plaintiff at any and at all times hereafter, and the costs are decreed to be paid by the defendant.

Decree to be drawn up in form for approval.