Opinion by
Beaver, J.,
The opinion of the court below, dissolving the preliminary injunction and dismissing the plaintiff’s bill, clearly states the essential facts of this case. All of the conclusions of law based thereon are, in our opinion, correct. No useful purpose, therefore, can be subserved by a repetition of either. It may not be amiss, however, to state some of the authorities which sustain the' conclusions at which the court arrived.
It may be well to premise that the building, the removal of *607 which is sought to be restrained by the plaintiff, was erected by the railroad company, from which the defendant purchased it, strictly within the limits of, and for the uses and purposes named in, the grant made by the appellant’s testator. The original grant was made “for the purpose of erecting, maintaining and using thereon the necessary buildings and appurtenances suitable for a railroad station, depot, freight office, warehouse and for all purposes necessary for conducting railroad operations.” That the erection made by the railroad company was for the purposes mentioned is practically admitted in the bill, and there is no allegation of any kind that the buildings so erected were for any purpose other than those contemplated in the grant. This being the case, we are not called upon to determine what might be the result if the railroad company, the original grantee, had erected a building or other permanent structure not contemplated by the grant and not necessary for the purposes for which it was made.
As early as Voorhis v. Freeman, 2 W. & S. 116, in an opinion rendered by Mr. Chief Justice Gibson, in which Chaffee v. Stewart, an unreported case, was reversed, it.is observed that this latter case was reversed, because the court “were indisposed to be wise above what is written,” but that an examination of the foundation of the decisions upon which Chaffee v. Stewart was ruled would probably have led to a different conclusion. In this opinion the old English doctrine of physical annexation as the criterion as to whether or not fixtures became a part of the realty was carefully examined and the conclusion there reached was a departure from this doctrine. This has been followed in later cases and, in Justice v. Nesquehoning Valley Railroad Co., 87 Pa. 28, Mr. Chief Justice Agnew reviews the cases and states the principle which, in our judgment, applies to the case in hand. He says: “The common-law rule is undoubted, that a trespasser, who builds on another’s land, dedicates his structures to the owner. The reason is obvious, for like he who sows where he cannot reap, he can obtain no advantage by his wrong, and having affixed his chattels to the realty, they become part of it, and he cannot add further injury by tearing them down. Even a tenant is to a modified *608 extent affected by the samé rule. If he improves under a covenant, the covenant governs his right of removal. So, if in favor of trade he erects structures for his business, doing no unnecessary or irreparable injury to the land, yet having done this without consent, he must remove his erections before the expiration of his term, otherwise he will be presumed to dedicate them to his lessor. There is also to be noticed a clear distinction between putting down a railroad track under a lease, and an act of appropriation of the land under a charter. This is clearly pointed out in Heise v. Penna. Railroad Co., 12 P. F. Smith (62 Pa.), 67. The very intent of an appropriation of land is to place upon it, and own and use the structures necessary to carry out the charter purpose. Hence no dedication of the material can be inferred in such a case. In this we perceive how differently the common law itself must view the application of its own rules. The great merit of the common law, so often commended by jurists, is its plasticity as a system of principles (and not merely of rigid rules), which can be adapted to new conditions in the affairs of men. Modern inventions and discoveries have so far transcended the conditions of former times that to apply the rule as to a mere trespasser, whose entry is a tort pure and simple, to the case of one authorized to enter for a great public purpose, merely because of an irregularity in the manner of proceeding, would be as vain' as to attempt to dress a full grown man in the garb of his childhood.”
This was said in reference to a case in which the claim was made that the railroad, having entered upon the land, without pursuing the regular mode provided in such cases, was a mere trespasser and the tracks and other improvements made by it consequently belonged to the owner of the land and were to be accounted for by the railroad to him in subsequent proceedings under the right of eminent domain. The principle, however, that the permanent erection made for a public purpose does not become a part of the realty is fairly laid down in this case, and it seems to us that it governs even more strongly, the improvements being such, and only such, as were contemplated in the grant, in the case under consideration.
Here was a grant for a specific purpose. There is no allega *609 tion that the defendant’s vendor, the grantee in the grant, transgressed or violated in any way the terms thereof. The erection made by it was for the very purpose for which the conveyance was made, and under the terms of the grant. When the use and occupation for which it was intended was ended, the reversion was of the estate conveyed and not of the improvements which had been made thereon.
In a case which has been somewhat extensively quoted— Wagner v. The Cleveland & Toledo R. R. Co., 22 Ohio St. 563, 10 Am. Rpts. 770 — it was held that “A railroad company, in the construction of a bridge upon its road, built stone piers and abutments on lands over which it had acquired the right of way. It subsequently abandoned the construction of the railroad at that place. Held, that the piers and abutments did not pass to the landowner. Held, also, that the fact that, upon such abandonment, the owner of the land had been allowed to take possession of that portion embraced in the right of way, and hold it for a period less than was required to extinguish the easement, did not, of itself, imply a relinquishment, by the railroad company, of its right to enter and remove the piers, etc.”
The fact that the estate conveyed by the grantor to the "grantee reverted to the former, upon the abandonment of the railroad, and that the grantor entered upon the possession of the land, did not in our opinion prevent the vendee of the grantee from removing the structure erected by the former, in accordance with the terms of the grant. The erection was entirely consistent with the grant and with the uses and purposes for Which it was made. It did not, therefore, become a part of the realty, but was a part of the estate granted, and, upon the reversion thereof, remained the property of the grantee. The right to sell the same was no greater than the right of removal and, when sold, the vendee had the same right to remove as had his vendor.
The principles which govern in an ordinary case of landlord and tenant, where the term is limited, do not apply here, because in such a case there is no right of entry to remove after the termination of the lease.
*610 The value of the structure having been clearly shown, if there were doubt as to the construction of the grant and the intention of the grantee in the erection of the buildings claimed, there was no difficulty in a recovery in an action at law, and, inasmuch as no irreparable injury would result, as found by the court, it seems also to us that there was a complete remedy at law, and that, therefore, on this ground, even if the more fundamental question was untenable, the bill was also properly dismissed.
Decree affirmed and appeal dismissed at the costs of the appellant.