Copley v. Stewart, Secretary of Highways, et al.

*Harry C. Golden*, for plaintiff.

*Harry A. Heilman* and *Ward McCullough*, for defendants.

CAMPBELL, P. J., 50th judicial district, specially presiding, July 28, 1930.—
W. N. R. Copley, the plaintiff, being the owner of a tract of land situated in
the Borough of Manorville, Armstrong County, Pennsylvania, leased a por-
tion thereof to the Department of Highways of this Commonwealth (herein-
after called "Department") for storage purposes, with the right to erect
thereon a storage shed. At the expiration of the term, the defendants, acting
for the Department, proceeded to remove the storage building, which had
been erected under the terms of the lease, to prevent which action a prelim-

inary injunction was issued on the bill of plaintiff. Upon hearing to continue the injunction the parties agreed that the proceedings should be treated as on final hearing.

From the evidence then taken the court makes the following

### Findings of fact.

1. The plaintiff is the owner of a tract of ground situate in the Borough of Manorville, County of Armstrong and State of Pennsylvania, as described in paragraph 1 of the plaintiff's bill.

2. On July 25, 1924, W. N. R. Copley entered into an article of agreement with P. D. Wright, Secretary of Highways, said agreement being as follows:

"*Whereas*, It is necessary in order to expedite and more efficiently carry out the work of the Dept. of Highways to obtain a permit from William Copley of Manorville, Pa., Armstrong County, to use or occupy a portion of his land about 126 feet by 140 feet adjacent to St. 203 Station 105, road which the Dept. of Highways is about to improve or maintain for the purposes of placing and using thereon Storage shed.

"*Now this agreement witnesseth*, That William Copley of Manorville, for and in consideration of the sum of $25.00 per month to him in hand paid, do hereby grant the use of said land by the said Dept. of Highways for the purpose above mentioned for the term of 60 months from the 1st of August, 1924, to the 1st of August, 1929, during which time or period this permit is irrevocable. Upon the expiration of the said term of this permit or upon the sooner surrender thereof by the Department of Highways, said Department shall restore any fences that have been removed or destroyed and remove from the surface immediately surrounding all débris or rubbish occasioned through the use of said land by said Department.

"It is hereby understood and agreed that if the Department of Highways surrender possession of the premises covered by this lease before the expiration of the full term of said lease, the Department shall pay only a proportionate part of the rental for said term.

"Witness our hand and seal this 2nd day of July, A. D. 1924.

"Witness: LESTER BISHOP          W. N. R. COPLEY   (Seal)

"This permit accepted by the Department of Highways, this 25th day of July, A. D. 1924

"Approved:                    By

   A. B. COLE                    P. D. WRIGHT

      Superintendent               Secretary of Highways

"Approved:

   H. B. MOFFIN, District Engineer

"*(a)* The lessor to pay all taxes to be assessed on said premises during said term except the water tax.

"*(b)* It is further understood and hereby agreed that the Dept. of Highways shall have the privilege at its option of renewing this lease for a similar period, upon its expiration. In case the said Dept. of Highways decides within the next few years, beginning ——————, to purchase the above described plot of ground, which shall not exceed $3500.00 dollars."

3. Upon the expiration of said agreement, to wit, Aug. 1, 1929, the plaintiff verbally extended its term for the period of one year, and the actions complained of in this bill occurred within said year.

4. In pursuance of said agreement the Commonwealth entered upon said land and erected a one-story corrugated iron building, 40 by 96 feet. The foundation walls were built of concrete with from 2½ to 4 feet below and

from 3 to 6 feet above the surface of the ground; the width of the end walls was 3 feet at the bottom and 2 feet at the top, while the side walls were 10 inches at the top. Prior to the hardening of the concrete, some thirty-six bolts, from 12 to 15 inches long, were inserted therein, leaving some 2½ or 3 inches exposed, upon which anchor plates with holes in were set. After the concrete hardened, steel uprights were set upon the anchor plates with the bolts fastened through eyes in the uprights, made secure with nuts, and a grout, made of sand and concrete without gravel, was poured around the bolts, nuts and plates in order to improve the appearance, aid drainage and prevent rust. Along the concrete side walls, while soft, wooden pegs were driven and later, in the holes thus formed, small plates were inserted, to which the steel sheeting of the building was fastened by bolts. This sheeting came in strips 3 feet wide, locked together before erection by caps or clips which slip over the outside, the top being fastened by clips. Upon the upright columns trusses were fastened with bolts, the truss braces being riveted together at the factory. The roof is in sheets fastened together with caps and to the trusses with special clips and bolted at the edge.

The building was ceiled with Celotex fastened to 2 by 4's bolted to the girders of the trusses. Inside was a tool house and a fully equipped office, all being fastened to 2 by 4's resting on the concrete floor. The building contained a lavatory with sewer and water connections, and the whole was lighted by electricity and contained a heating system, all installed by the Department.

5. The superstructure of this building was a portable steel structure, one of many acquired by the Department, made in accordance with form specifications, designed and purchased for the purpose of erecting on leased land, and thereafter from time to time to be dissembled, moved and reassembled upon other locations.

6. The said superstructure was so designed and erected as to permit of dissembling, moving and reassembling in other locations without the destruction of any essential units.

7. The superstructure of the building may be removed without injury to it or the foundation by loosening nuts and bolts with a wrench or chisel, removal of roof and sides in sections, the braces between the trusses, then the trusses and uprights. The superstructure then would be in the condition in which it was prior to erection, ready for re-erection. The grouting having been removed, the foundation and floor, with sewer, water and gas connections, would be in the same condition as before erection of superstructure.

8. The building in question was designed, erected and used by the Department for the purpose of doing the work or business of the Commonwealth entrusted to it by statute, to wit, the construction, repair and maintenance of the Commonwealth's highways, and for the very purpose for which the lease was made, and is, therefore, a trade fixture.

9. The intention of the parties to this lease, at the time of its execution and at the time of the erection of the building, was that it was not to become a part of the freehold, but was to be removed at the termination of the lease.

10. The defendant James Lyall Stewart is the Secretary of Highways of the Commonwealth of Pennsylvania, and the defendant W. K. Myers is the superintendent of that district of said Department, which includes the County of Armstrong.

11. At the time of the filing of this bill, the defendants, acting as officers and employees of the Commonwealth, either personally or through others under their supervision and direction, were engaged in removing the super-

structure of said building off the land of plaintiff, intending to continue until completely removed.

12. If the said building has become a part of the real estate, it cannot be removed without irreparable damage to the plaintiff.

## Discussion.

The Department of Highways of the Commonwealth leased from the plaintiff land in the Borough of Manorville, Armstrong County, for the purpose of erecting a storage shed for the care of the Department's property used in the construction and maintenance of roads, upon which land it erected a portable steel building upon a permanent concrete foundation, the superstructure being fastened to the foundation by bolts and nuts, the bolts being imbedded in the concrete. The inside of the building was finished, having sewer, water and gas connections and a well furnished office, the whole being used in the road work of the Department. Before the expiration of the term of the lease as continued by agreement, the Department, through the defendants and others as its agents, proceeded to remove the superstructure by loosening the bolts and nuts and some grouting that had been placed over the exposed portions of these bolts, and to take down, section by section, the superstructure and remove it, for erection elsewhere. The plaintiff, contending that the building had become a part of his real estate and there being no provision in the lease with reference to its removal, filed a bill to enjoin the defendants from taking apart or removing the building.

1. The defendants contend that the court has no jurisdiction to enjoin their contemplated action, because it constitutes the exercise of a discretionary authority rather than a ministerial duty, arguing that the matter of the erection of the building, the manner of its use and the movement of it to another location is within the discretion of the Secretary of Highways. We think that if the defendants are clothed with authority to do these things, they constitute discretionary rather than ministerial duties, and if they have such authority and the duties are discretionary, then they cannot be enjoined from their performance. If they are ministerial, then, in a proper case, their performance may be enforced by mandamus or enjoined by injunction. Upon this subject the law is clearly defined. "It is objected that the Governor is not subject to this form of our jurisdiction. It is far from our intention to claim the power to control him in any matter resting in executive discretion. But the rule of law seems to be that when the legislature proceeds to impose on an officer duties which are purely ministerial, he may be coerced by mandamus or restrained by injunction:" Mott et al. v. Pennsylvania R. R. Co., 30 Pa. 9, 33. "While it is against Meehan in his official capacity as Fish Commissioner, it is not to enjoin him from discharging any official duty imposed upon him by statute, but it is to prevent his performing what is to be regarded as a mere ministerial duty under the general powers and discretion conferred upon him, and if in so doing he defies a covenant between the state and the appellee, he cannot shield himself under the plea that the state is being sued:" Isett v. Meehan, 232 Pa. 504, 507. "The general rule is that the courts cannot interpose by injunction or mandamus to limit or direct the discretion and action of departmental officers in respect of pending matters within their jurisdiction and control:" Black v. Woodward, 1 D. & C. 205, 210. See, also, Haverford School v. Department of Highways, 8 D. & C. 305, 310.

However, if the action complained of, although it involve discretion on the part of the defendants who are also officers of the Commonwealth, is in violation of the law which created their authority (Cope et al. v. Hastings, 183

Pa. 300, 323), or is without the duties imposed by statute upon the Department (Haverford School *v.* Department of Highways, *supra),* or is in defiance of a covenant of the state (Isett *v.* Meehan, *supra),* it may be enjoined. If the action complained of constitutes an illegal act, such as a trespass on another's land, or the seizing of another's personal property without statutory authority, the persons performing such acts cannot shield themselves under the plea that the Commonwealth is the real defendant. In the case of Lenhart *v.* Wright, Secretary of Highways, 286 Pa. 351, a preliminary injunction was awarded against the defendant, prohibiting the tearing down of a stone wall which the plaintiff alleged was on his private property and which the defendant alleged was an encroachment on the public highway. The main question involved was the location of the property line. Until that was determined the question of authority in the Secretary of Highways to remove the wall, the case not involving a relocation of the highway, could not be determined. It was determined that the wall was outside the property line, and, therefore, the Secretary had authority and the duty was discretionary, and the bill was dismissed. If it had been determined that the wall was inside the property line, the Secretary would have had no authority to remove it and the preliminary injunction would have been made permanent. So, here, the underlying question is the status of this building—whether, under the law, it is the property of the plaintiff, subject to its occupation by the Department, or the property of the Department with the right to remove. If the building is the property of the plaintiff, then the defendants have shown no authority in the Department to remove it, and the preliminary injunction must be made permanent. If the property is that of the Department, with the right to remove, then, such action being discretionary, the injunction must be dissolved and the bill dismissed. In the case of Meigs's Appeal, 62 Pa. 28, the United States Government had, during the Civil War, erected a building to be used as a barracks for the soldiers, which later was used as a war-time hospital. It was erected on a commons for which the borough was trustee, and at the expiration of the war the borough attempted to enjoin the government officials from its removal on the ground that it had become a part of the realty. There was no contract and the bill was dismissed. The Supreme Court says (page 33): "These structures being put up by the United States for military purposes and built of their own materials, the title to the materials must have been lost to the United States and vested in the plaintiffs before an injunction would be issued to restrain their removal."

2. What is the status of this building? The plaintiff contends it is a part of the freehold, both because it is permanently fastened to a foundation laid in the ground and because the parties did not intend its removal, and, therefore, it is not removable, there being no specific provision in the lease for its removal. The defendant contends *(a)* that it is not a part of the real estate, being a portable building not permanently fastened to the land; that it was designed, constructed and erected with the intention to remove it at the expiration of the lease and that such intent was known to and acquiesced in by plaintiff; *(b)* that it is a trade fixture; and *(c)* that, at the time of its erection, it was personal property of the Commonwealth, and, therefore, could not legally be disposed of by the Secretary of Highways, and that plaintiff was bound by a knowledge of the law with reference to the disposal of personal property of the Commonwealth, and that for any one or all of these reasons the Secretary of Highways has a right to remove the structure.

*(a)* "The old common-law criterion of physical attachment was exploded in this state . . . in Voorhis *v.* Freeman, 2 W. & S. 116" (page 274):

"Unquestionably the intention to annex . . . is the true legal criterion" (page 273): Hill v. Sewald, 53 Pa. 271. The question of whether or not a fixture erected by a tenant has become a part of the freehold depends upon whether or not at the time of the erection the tenant intended to remove it during the term; the manner of its annexation to the land is no longer the governing test: Seeger v. Pettit, 77 Pa. 437; Carver v. Gough, 153 Pa. 225; Albert v. Uhrich, 180 Pa. 283. The intention is that "expressly declared by the parties . . . or which flows, patent to all, from the nature and character of the act, the clear purpose to be served, the manifest relation which the articles bear to the realty, and the visible consequences of their severance upon the proper and obvious use of it:" National Bank of Catasauqua v. North, 160 Pa. 303, 308. To the same effect is Silliman v. Whitmer, 11 Pa. Superior Ct. 243, 257, to which is added: "The question of fixture or not depends on the nature and character of the act by which the structure is put in place, the policy of the law connected with its purpose, and the intentions of those concerned in the act" (citing Meigs's Appeal, 62 Pa. 28; Hill v. Sewald, supra). See, also, McKim v. Burke, 57 Pa. Superior Ct. 530, 534, where it is stated: "The intention of the parties, as derived from the lease, and the circumstances surrounding the transaction, determine the question." See, also, Waltman v. Mayer, 97 Pa. Superior Ct. 236.

The lease from the plaintiff, Copley, to the Department does not in express terms provide either for the removal of the building or for its retention upon the land at the expiration or during or after the term. In such case, the general rules of law above stated are intended to define this intention of the parties which has been left undefined by their contract: Coleman v. Lewis, 27 Pa. 291-292. The lease sets forth, inter alia: "Whereas, it is necessary in order to expedite and more efficiently carry out the work of the Department of Highways to obtain a permit from William Copley . . . to use or occupy a portion of his land [description of land] adjacent to . . . road which the Department of Highways is about to improve or maintain for the purpose of placing and using thereon Storage shed: Now this agreement witnesseth that William Copley . . . do hereby permit the use of said land by the said Department of Highways for the purpose above mentioned . . . [term]. . . . Upon the expiration of the said term of this permit or upon the sooner surrender thereof . . . said Department shall restore any fences that have been removed or destroyed and remove from the surface immediately surrounding all débris or rubbish occasioned through the use of said land by said Department." A rider is attached granting to the Department the option of renewing the lease and of purchasing the land at a price not to exceed $3500.

There is no doubt but that the intention of the Department was to procure and erect on this land a building that could be dissembled, removed and reassembled elsewhere, within the discretion of the' Secretary. It was one of forty-five similar buildings manufactured upon specifications prepared by the Department, purchased and erected by it on leased land at the approximate time the building was erected on plaintiff's land. Section 3 of those specifications provided that they were "intended to cover a standard type of sectional steel structure . . . so designed and erected as to permit of dissembling, moving and reassembling in other locations without the destruction of any essential units." They were erected upon leased land because the Department at that time had no authority to purchase land. The testimony of the engineers of the Department and the action of the Department in the removal and reconstruction of other similar buildings shows the intention of the Department that the building in question was not to become part of the

realty, but was to be removed before the expiration of the lease. The secret intention of one of the parties, however, is not the test: National Bank of Catasauqua v. North, *supra*.

There is not much direct evidence of the intention of the plaintiff at the time of the execution of the lease or during the construction of the building, but what there is indicates that his idea of requiring the building to be left in place arose at the end of the term. He observed the type of building, that it came in sections and the manner of its erection. He talked to a representative of the Department, at the time of the extension of the lease, about leaving the foundation, about erecting thereon a tile building, about the purchase of the building, and did not say that he claimed it.

The nature and character of this transaction is fully set forth in the lease and every step was well known to plaintiff. All the circumstances surrounding the transaction and the purpose to be served by the building indicate a temporary use of the building in connection with roads then under construction or in reference to the then existing arrangement of maintenance districts with the purpose of its removal to another location as the exigencies of the Department's business required. There is nothing to indicate that the severance of this building from the land would visibly affect the proper and obvious use of the land. The use of this land prior to this lease does not appear in the evidence. It was not, therefore, used for any purpose similar to the use for which this building was erected. There is no evidence that any building stood upon the land; there is no evidence that the severance of the building would reduce the value or affect the use of the land as it stood at the date of this lease, and it is established by the testimony that the building can be removed and the foundation taken out, the land leveled and be in as good or better condition than it was in before, available to the same extent for all the uses for which it was formerly available. The provision of the lease that fences would be restored and all débris and rubbish removed from the premises indicates the intention of the parties to leave the premises at the end of the term in the same condition in which they were when the lease was executed. The plaintiff points to the option to purchase the land, as contained in the lease, as indicating an intention to leave the building on the premises, citing Carver v. Gough, *supra*. In that case it was a farm lease, and the buildings in dispute were connected with the farm buildings, including a house to cure tobacco, it being a tobacco producing farm, and it was stated that the tenant expected to purchase the land or stay on it during his lifetime, and that he had so testified. The case, however, was decided upon a covenant of the lease. In McClintock & Irvine Co. v. Ætna Explosives Co., 260 Pa. 191, the fact of an option to purchase for a stated sum did not affect the right of the tenant to remove fixtures. "When the relation of landlord and tenant exists, there is an improbability that the latter will intend, in excess of his contract obligations, to benefit the landlord by increasing the value of the premises to his own detriment. Hence, when an improvement or addition is made which is physically removable without destroying the substantial identity of state of the premises after its removal with their state before the making of the improvement or addition, the presumption is that the tenant, in making it, intended to remain its owner:" Trickett on Landlord and Tenant, 2nd ed., page 531.

In Silliman v. Whitmer, *supra*, one of the elements to determine the intent of the parties is stated to be "the policy of the law connected with its [the building's] purpose, citing Meigs's Appeal, 62 Pa. 28. In Young v. Oviatt, 35 Pa. Superior Ct. 603, 608, the court dismissed a bill by the reversioner to

enjoin a railroad company from removing a railroad station erected by it on land conveyed for that specific purpose, affirming the principle that a permanent erection made for a public purpose does not become a part of the realty, adding: "Here was a grant for a specific purpose. . . . The erection made by it [grantee] was for the very purpose for which the conveyance was made and under the terms of the grant. When the use and occupation for which it was intended was ended, the reversion was of the estate conveyed and not of the improvements which had been made thereon." In Meigs's Appeal, *supra*, the Supreme Court, in dismissing the bill to enjoin government officers from removing from the York common barracks erected by the Government, says (page 33) : "[All the acts of the Government show that the buildings were to be] mere temporary structures, to be used during the continuance of the war or so long as the necessities of the Government made this location convenient for military purposes," and that the Government "intended no annexation to the freehold;" and that the nature and character of the structures showed they were not improvements made for a use connected with the soil, neither intended to give value to it nor to receive value from it. (Page 34) "Their purpose was not different from that of the tents spread for the accommodation of the army or its board huts used for winter quarters, the only real difference being that these structures were intended for greater comfort and a longer occupancy of the location." And, again: "There was no intent to improve the ground or to make it accessory to some business or employment. . . . The United States intended no dedication of the materials to the borough and the borough expected none." The same argument may be used with reference to the building in this case, and we think the plaintiff in dealing with the Commonwealth was bound to know these facts and the further fact that the Department's representatives had no authority to dispose of the Commonwealth's property in this way, as is more fully shown under subdivision *(c)*, hereinafter considered. Also, the plaintiff, at the time he executed the lease, was bound to know the policy of the law with reference to public buildings as laid down in these two last cited cases. From these facts there is imputed to the plaintiff an intent that the buildings were not to become a part of the realty and not to remain at the end of the term.

*(b)* The same rule of intent applies to trade fixtures, that is, buildings erected in furtherance of the trade or business of the tenant, with this difference—that with respect to trade fixtures there is an implied intent of the parties, or presumption in favor of trade, that the buildings are to be removed before the end of the term and it is only on leaving without removal that the intention to make a gift of them to the landlord is imputed: Hill *v.* Sewald, 53 Pa. 271, 274; Watts *v.* Lehman, 107 Pa. 106, 110; Albert *v.* Uhrich, 180 Pa. 283, 285; McKim *v.* Burke, 57 Pa. Superior Ct. 530, 534; Donnelly *v.* Frick & Lindsay Co., 207 Pa. 597, 600; Radey *v.* McCurdy, 209 Pa. 306, 310; McClintock & Irvine Co. *v.* Ætna Explosives Co., 260 Pa. 191.

This presumption applies to an extension of the term or to a renewal of the lease: Donnelly *v.* Frick & Lindsay Co., *supra;* Radey *v.* McCurdy, *supra.*

The size and relative permanency of the fixture is immaterial, the rule having been applied to substantial buildings; to government barracks in Meigs's Appeal, *supra;* to a substantial steel building, 52 by 180 feet, laid on concrete foundation with a cast iron floor: McClintock & Irvine Co. *v.* Ætna Explosives Co., *supra,* page 194, where it is said that lessor was fully informed of lessee's intention to use the premises for manufacturing purposes, which use required the installation of furnaces which were installed in the building; to a derrick upon an oil lease and the casing installed in the oil well: Robin-

son v. Harrison, 237 Pa. 613, it being implied that the fixtures were placed on the leasehold to enable the lessee to use and enjoy them during the term and then remove them; to a granary resting on staddles built into the land and to cotton spinning machinery fastened by screws sunk into holes in the stone flooring secured by molten lead poured into them: Wiltshear v. Cottrell, 72 Eng. C. L. Rep. 674, and Hellawell v. Eastwood, 6 Exch. Rep. 295, as cited in Gulick v. Heermans, 6 Luzerne Legal Reg. 227, 230; to a railroad station in Young v. Oviatt, supra; to a stationary steam saw-mill permanently attached to the land for the purpose of the tenant's trade: Kile v. Giebner, 114 Pa. 381, 386; to a frame building erected by lessee and connected with a mill theretofore on the land, the frame building having been erected for the purpose of trade: Thropp's Appeal, 70 Pa. 395; to an engine house built of stone and wood, with a stone foundation: White's Appeal, 10 Pa. 252; to a wooden dwelling house with a cellar of stone or brick foundation and a brick chimney, erected by the tenant with a view of carrying on the business of a dairyman and for the residence of his family: Van Ness v. Pacard, 2 Peters, 137, 7 U. S. (L. ed.) 374, in which Justice Story says the question of whether fixtures erected for the purposes of trade are or are not removable does not depend on the form or size of the building to be removed, whether it has a brick foundation or not, or is one or two stories high, or has a brick or other chimney, the sole question being whether it is designed for the purposes of trade.

Applying these rules to the present case, we find that the building in question was erected by the tenant for the purposes of trade (of which lessor had knowledge); that the presumption of intention to remove before the expiration of the term applies and is not overcome by any countervailing proof, but such intention is affirmatively shown by the evidence; that the attempted removal was within the term of the lease and, therefore, the defendants had authority to remove same, and in attempting to do so were acting within their rights.

(c) Public policy forbids the disposal of public property, except under statutory authority, by the person, department or other instrumentality and under the terms and conditions therein specified. At the date of the execution of the lease between the plaintiff and the Department the manner of the disposal of such property was governed by article v, section 508, and article xxi, section 2103 (i) of the Administrative Code of 1923, P. L. 498, 535, 616, section 508 of which made it the duty of each department, board or commission in whose possession should be personal property no longer of service to the Commonwealth to deliver the same to the Department of Property and Supplies, except as to certain perishable property; and section 2103 (i) of which provided for the sale of the same, after advertisement, by the Department of Property and Supplies. This was a reënactment of legislation placing such authority in the old Board of Public Grounds and Buildings and was not affected by the amendment of April 13, 1927, P. L. 207, 263. The Administrative Code of 1929, P. L. 177, reënacts section 2103 (i), as amended by the Act of 1927, as section 2405, without change, and reënacts section 508 of the former Code as sections 510 and 511, adding a definition of unserviceable property and authorizing other departments, boards and commissions to sell certain personal property. No other statutory authority governing this question has been called to our attention and we are unable to find any. If this building is unserviceable property it must be disposed of by the Department of Property and Supplies in the manner above stated; if serviceable, there is no way in which it may be disposed of. The plaintiff is bound by a knowledge

of these provisions of the law. They must be treated as written into the lease, and when so done, establish the intent of both parties to the lease that the title in the Commonwealth to this personal property should not pass from it. Had the parties stipulated in their lease that, at its termination, this building should become a part of the freehold, or so intended without stipulation, these provisions of the statute would have effectively prohibited such a result.

### Conclusions of law.

1. The question of whether or not a fixture erected by a tenant upon leased land constitutes a part of the freehold depends upon whether or not, at the time of the erection, the parties intended its removal during the term. The intention to annex is the true legal criterion.

2. The secret intention of one of the parties is not the test.

3. The manner of its annexation to the land is not the governing test.

4. The intention which controls is that expressly declared by the parties, or which flows from the nature and character of the act, the clear purpose to be served, the manifest relation which the articles bear to the realty, the visible consequences of their severance upon the proper and obvious use of it, and the policy of the law connected with its purpose.

5. The policy of the law is that a permanent erection made for a public purpose does not become a part of the realty, and the parties to this lease were bound to know that rule of law and are presumed to have contracted accordingly and to have intended its incorporation in their lease.

6. With respect to fixtures erected by a tenant for the purpose of business or trade, in the absence of an express contract relating to their removal, there is an implied intent of the parties to the lease, or a presumption in favor of trade, that such fixtures are to be removed before the end of the term and that it is only on leaving without removal that the intention to make a gift of them to the landlord is imputed.

7. Nothing short of the clearest expression of an agreement by the parties to that effect can justify the extension of the grasp of the landlord so as to cover chattels or personal property brought upon the premises by the tenant in pursuance of the business for which the premises were leased. In this case there is no evidence of an express contract between the parties with reference to the removal of the building in question.

8. The building in controversy was erected by the Commonwealth through the Department of Highways out of materials owned by the Commonwealth.

9. The only statutory authority whereby personal property of the Commonwealth, including the building in controversy, can now be disposed of, or could have been during the term of this lease, provides for the sale thereof by the Department of Property and Supplies after advertisement as provided for in sections 508 and 2103 (i) of the Administrative Code of 1923, P. L. 498, and in sections 510, 511 and 2405 of the Administrative Code of 1929, P. L. 177.

10. Neither the defendants nor any one acting for the Department of Highways of the Commonwealth had authority at any time during the term of the lease in question to sell, give away or otherwise dispose of or enter into a contract for the disposition of personal property of the Commonwealth, including the building in question, and the plaintiff is visited with knowledge of such want of authority.

11. Such contract if entered into would be illegal and void and unenforceable.

12. The building in question was not at any time a part of the freehold upon which it was erected.

13. The acts of the defendants in removing the building were undertaken as representatives of the Department of Highways of the Commonwealth and were discretionary within the powers conferred upon them.

14. Therefore, the acts of the defendants complained of cannot be enjoined.

### Decree.

And now, July 28, 1930, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows: The preliminary injunction heretofore granted is dissolved and the bill in equity is dismissed, at the cost of plaintiff.