# McClintock & Irvine Company, Appellant, *v.* Ætna Explosives Company.

*Landlord and tenant—Leases—Construction—Expiration of term —Lessee's right to remove machinery and apparatus at end of term —Trade fixtures—Words and phrases—"Apparatus"—Evidence— Declarations—Steel framed building—Case for jury.*

1. In case of doubt or uncertainty as to the meaning of language used in a lease, its provisions will be construed most strongly against the lessor and in favor of the lessee.

2. In the absence of an express contract concerning trade fixtures there is an implied contract permitting the tenant to remove them if done at the proper time and in a proper manner.

3. What constitutes trade fixtures is a question of intention to annex, not the character of the physical annexation to the realty, and such question is usually a mixed question of law and fact and therefore for the jury.

4. Where the lease determines the ownership of the chattels or property placed on the premises by the tenant, the rights of the parties depend upon the interpretation of the instrument, without regard to the law of trade fixtures, and the question is for the court.

5. The word "apparatus" is defined "a generic word of the most comprehensive signification; implements; an equipment of things provided and adapted as a means to some end; any complex instrument or appliance for a specific action or operation, of which mechanical or chemical instruments are given as examples; a full collection or set of implements for a given duty, experimental or operative; things provided to some end, especially a full collection or set of implements or utensils for performing scientific experiments or operations."

6. Where the steel framework of a building erected by the lessee contemporaneously with mechanical apparatus and appliances is an essential part of the scheme itself and necessary to its operation, the mere act of partly enclosing the sides of the framework and covering the whole with a roof does not have the effect of so changing its character as to make it distinct from the contents enclosed, so as to preclude its removal at the expiration of the lease.

7. In an action by a lessor against a lessee to recover damages for the removal of a building and furnaces at the expiration of the lease, and for compensation for injury to other buildings, it appeared that the lease gave the lessee an option to purchase at the end of the term (which was not exercised) and contained a cove-

nant on part of the lessee "to remove no additions or improvements made by the lessor but the lessee shall have the right at the end of the term without damage to the premises to remove all machinery and apparatus and other things of that character installed by it during the term." At the time of the execution of the lease the lessor was fully informed of the lessee's intention to use the premises for the purpose of constructing thereon an experimental plant for the manufacture of benzine and gasoline by a new process, the use of which required the installation of furnaces of a particular type. The lessee constructed such furnaces together with other necessary equipment, all resting upon a cast iron floor, supported by steel framework laid on concrete foundations. The supports, in addition to being a necessary part of the furnaces, constituted a part of the steel building, entirely enclosing the furnaces and equipment. The trial judge charged the jury that if the defendant erected the building for experimental purposes in connection with its business and with the intention of taking it away at the expiration of the lease, defendant would not be liable for damages on account of its removal. The jury found a verdict for the plaintiff in an amount indicating that the question of the right of removal of the building and furnaces was determined adversely to the plaintiff. *Held,* the charge was proper and the verdict will be sustained.

8. In such case declarations made by an officer of the defendant company to the effect that if its option to purchase was not exercised the property would revert to plaintiff equipped for operation under the process, was properly excluded.

*Practice, Supreme Court — Statement of questions involved— Matters not included.*

9. Questions not included in the statement of questions involved will not be considered by the Supreme Court.

Argued Oct. 18, 1917. Appeal, No. 179, Oct. T., 1917, by plaintiff, from judgment of C. P. Allegheny Co., Oct. T., 1917, No. 648, on verdict for plaintiff in case of Mc-Clintock & Irvine Company, a Corporation, v. The Ætna Explosives Company, a Corporation. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit for breach of covenants of lease. Before CARPENTER, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $6,968.02. Plaintiff appealed.

*Errors assigned,* among others, were rulings on evidence and portions of the charge of the court.

*A. M. Thompson,* with him *Gray, Thompson & Rose,* for appellant.—The steel building became on erection the property of the lessor: Isman v. Hanscom, 217 Pa. 133; Lindsay Brothers Inc. v. Curtis Publishing Company, 236 Pa. 229; Reber v. Conway, 203 Fed. Rep. 12.

*B. J. Jarrett,* with him *William H. Button* and *Willis F. McCook,* for appellee.—The lessee was entitled to remove the furnaces and the steel structure which supported and was a part of the furnace: Lindsay Brothers Inc. v. Curtis Publishing Company, 236 Pa. 229; Conneaut Lake Ice Co. v. Quigley, 225 Pa. 605; Kaufmann v. Liggett, 209 Pa. 87; Robinson v. Harrison, 237 Pa. 613.

The furnaces and the steel framework were "machinery, apparatus and other such property" within the meaning of the terms of the lease: Hill v. Sewald, 53 Pa. 271; White's App., 10 Pa. 252; Morrison v. Baechtold, 93 Md. 319; Hart v. Plum, 14 Cal. 148; Board of Education v. Andrews, 51 Ohio St. 199; Harris v. Townley, 161 S. W. 5.

OPINION BY MR. JUSTICE FRAZER, January 7, 1918:

Plaintiff leased to defendant a manufacturing site in the City of Pittsburgh for a term of twelve and one-half months with the privilege of purchasing the property at any time during the term for a stated sum. At the expiration of the term defendant vacated the premises without exercising the option to purchase, and removed, among other property, a building and furnaces erected by defendant during its occupancy. Plaintiff sued for damages, alleging removal of the building and furnaces was without right, and also claiming compensation for injury to other buildings and for various other breaches of covenant. The trial judge submitted to the jury all questions involved in the case; a verdict was rendered for plaintiff for an amount which indicated the jury de-

cided the question of right of removal of the building and furnaces adversely to plaintiff, who, upon judgment being entered, appealed.

The lease contains a covenant on part of the lessee "to remove no additions or improvements made by the lessor but the lessee shall have the right at the end of the term without damage to the premises to remove all machinery and apparatus and other things of that character installed by it during the term." When the lessee took possession the premises were occupied in part by factory buildings suitable for the purpose for which constructed and used by the lessor, together with several dwelling houses. The lessor was fully informed of lessee's intention to use the premises for the purpose of constructing thereon an experimental plant for the manufacture of benzine and gasoline by what was known as the Rittman process, the secret of which had been offered by the United States government to manufacturers agreeing to construct plants for the demonstration and use of the method. The use of this process required the installation of furnaces of a particular type. The first furnace was purely experimental and was constructed in the main building on the premises at the time lessee took possession. Six additional furnaces were subsequently constructed by defendant on an unused portion of the property. These furnaces were made up of large tubes surrounded by the furnace proper, which was of steel and fire brick construction. In connection with the furnaces were necessary pumps, motors and other driving mechanisms, pipes, valves, condensers, safety appliances, etc., all resting upon a cast-iron floor, in turn supported by steel framework, laid on concrete foundations. Also upon the premises was an overhead crane used in connection with the furnaces. All mentioned attachments and mechanical contrivances were necessary to the operation of the furnaces and required rigid supports of fireproof construction to eliminate vibration and guard against fire. In addition to being

a necessary part of the furnaces, the supports constituted a part of the steel building enclosing them. The building, 52 x 180 feet, built entirely of steel and iron was open along the sides below the eaves to provide ventilation. The trial judge charged, inter alia, that if defendant erected the building for experimental purposes in connection with its business and with the intention of taking it away at the expiration of the lease, defendant would not be liable for damages on account of its removal. He also left to them to determine if the furnaces and the building were so interwoven as a whole structure to constitute one plant for the purpose of defendant's business. Plaintiff contends the question submitted was one of law to be determined by a construction of the lease, and, under its provisions, no right existed in defendant to remove either the furnaces or the building. We are inclined to agree with plaintiff's view of the matter, so far as to hold the question of right of removal is governed by the express provisions of the lease and accordingly is a question of law. We cannot, however, concur in the conclusion that defendant was thereby precluded from removing the furnaces and building in which they were constructed. The lease forbids the removal by lessee of additions or improvements made by lessor—and this clause is significant and aids in the construction—and gives lessee the right to remove "all machinery and apparatus and other things of that character installed by it during the term." A general rule is that in case of doubt or uncertainty as to the meaning of language used in a lease, its provisions will be construed most strongly against the lessor and in favor of the lessee: Kaufmann v. Liggett, 209 Pa. 87; Lindsay Bros. Inc. v. Curtis Publishing Co., 236 Pa. 229. In the last cited case it is said: "Nothing short of the clearest expression of an agreement by the parties to that effect, can justify the extension of the grasp of the landlord so as to cover chattels or personal property brought upon the premises by the tenant, in pursuance of the business

for which the premises were leased." In recognition of this rule this court has held that in absence of an express contract concerning trade fixtures there is an implied contract permitting the tenant to remove them if done at the proper time and in a proper manner: Robinson v. Harrison, 237 Pa. 613.

What constitutes trade fixtures is one of intention to annex, not the character of the physical annexation to the realty: Seeger v. Pettit, 77 Pa. 437; Catasauqua National Bank v. North, 160 Pa. 303; Wick v. Bredin, 189 Pa. 83; and is usually a mixed question of law and fact and therefore for the jury: Campbell v. O'Neill, 64 Pa. 290; Seeger v. Pettit, supra. The lease in the present case reserves to lessee right to remove "machinery, apparatus and other things of that character." In view of this expressed provision, the consideration of the question of trade fixtures becomes unnecessary, as the rights of the parties, with respect to removal of such property, are covered by contract. The following language in Isman v. Hanscom, 217 Pa. 133, 135, is particularly applicable here: "The important and controlling question in this case arises out of the construction of the lease between the parties. The question of trade or tenant fixtures does not enter into the case, and hence need not be considered. The lease, which is the contract between the parties, determines the ownership of the property in question, and hence the rights of the parties thereto depend entirely upon the proper interpretation of the instrument. If the lease had been silent as to the ownership of the various items of property in dispute, then it would have been necessary to determine whether the property was trade fixtures, and, if so, to whom it belonged, to the landlord or the tenant. When, however, a landlord and tenant stipulate in their lease as to the ownership of chattels which may be placed upon the demised premises by the tenant, the stipulation will be in force regardless of what might be the rights of the parties at common law. In such cases, the contract is the

law made by the parties themselves, and that must determine their rights."

Application to this case of the general rules relating to the construction of leases, heretofore mentioned, warrants the conclusion that property placed upon the premises by the tenant in the way of fixtures necessary to the proper operation of the furnaces, which the parties contemplated might be installed by the lessee, would come within the designation "apparatus and other things of that character." The process in question being in an experimental stage probably neither of the parties was aware of the exact machinery and apparatus the plant would require or precisely what devices would be necessary for setting it up. To construct the plant the building of the furnaces was necessary and to these, in turn, defendant was obliged to connect the various apparatus and appliances to enable the whole to be used for the purposes intended. This required the construction of framework to carry pipes and support the furnaces, overhead cranes and other mechanical devices used in connection with the scheme. Over all the apparatus, a covering or housing was required to protect both the equipment and workmen from the weather. In 3 Corpus Juris, 252, the word "apparatus" is defined "A generic word of the most comprehensive signification; implements; an equipment of things provided and adapted as a means to some end; any complex instrument or appliance for a specific action or operation, of which mechanical or chemical instruments are given as examples; a full collection or set of implements for a given duty, experimental or operative; things provided to some end, especially a full collection or set of implements or utensils for performing scientific experiments or operations." Many cases are cited to sustain the text. Where, as in the present case, the framework of a building erected contemporaneously with the mechanical apparatus and appliances is an essential part of the scheme itself and necessary to its operation, we see no valid reason for

holding the mere act of partly enclosing the sides of the framework and covering the whole with a roof should have the effect of so changing its character as to make it distinct from the contents enclosed. We are not required, however, to decide that the building in this case is within the meaning of the single word "apparatus" since the parties incorporated in the lease a sentence broader in its scope, to wit: "all things of that character installed by it during the term," that is of the character of "machinery and apparatus." Under the admitted facts in the case, and giving lessee the benefit of the doubt as required, the latter was within its legal rights under the lease in removing the furnaces and the building necessary for their proper protection and operation constructed by it. Plaintiff accordingly has no just ground for complaint that the trial judge left the question for the determination of the jury.

Under the foregoing view of the main question in the case, since the intent of the parties is to be found from the construction of the writing, a discussion is needless of the correctness of the ruling of the trial judge complained of in the tenth assignment of error in excluding evidence of declarations made by an officer of defendant company to the effect that if its option to purchase was not exercised the property would revert to plaintiff equipped for operation under the Rittman process.

The remaining assignments of error complain of statements made in various parts of the charge, and relate to the measure of damages for breaches of certain other covenants in the lease. The assignments cannot be sustained. The verdict was in favor of plaintiff and the charge as a whole was a fair and adequate presentation of the case. Counsel for appellant apparently had little faith in the worth of these assignments as the questions raised are not included in the statement of questions involved, hence their consideration is unnecessary: Spang v. Mattes, 253 Pa. 101; Hopkins v. Tate, 255 Pa. 56.

The judgment is affirmed.