## Prudential Insurance Company of America, Appellant, *v.* Kaplan et al.

Argued January 26, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*A. Floyd Vosburg,* with him *A. A. Vosburg,* of *Vosburg & Vosburg,* for appellant.

*Henry S. Sahm,* with him *J. Julius Levy* and *Irving L. Epstein,* for appellees.

OPINION BY MR. JUSTICE LINN, March 21, 1938:

Plaintiff became owner of a three-story business building in Scranton in 1936 at a foreclosure sale of a mortgage held by it, dated November 20, 1929. The second floor was occupied as a billiard room and bowling alley and the tenant proposed to take out the bowling alleys. The plaintiff filed a bill to restrain the removal, which the learned court dismissed, being of opinion "that the intention of the parties was, at the time the bowling alleys were placed in the building, that the same were to be treated as personal property." The question is whether the defendants had the right to detach and remove them. The record contains a very meager showing of facts.

In *Radey v. McCurdy,* 209 Pa. 306, at page 310, 58 A. 558, we said: "When a tenant attaches to the land fixtures necessary for him in the conduct of his business, the presumption is that, at the expiration of his lease, he will remove them; and it is his right to do so. They are not put in for the benefit of the landlord, and, until the tenant, after his term expires, leaves them on the premises in which he no longer has any interest, no intention can be imputed to him to abandon them to his lessor: *Hill v. Sewald,* 53 Pa. 271; *Watts v. Lehman,* 107 Pa. 106." At page 312 we quoted from an earlier case as follows: " 'The presumption of the law, being in favor of trade, is that a tenant does not intend to make his trade fixtures part of the realty for the permanent benefit of his landlord, but will remove them before the end of his term; and it is only when he leaves without removing them during the term that an intention of making a gift of them to the landlord is to be imputed to him: *Hill v. Sewald,* 53 Pa. 271; *Watts v. Lehman,* 107 Pa. 106. If, during the term, no intention can be imputed to the tenant to make a gift to his landlord of

fixtures, which he had attached to the land for the use of his business, and he has a right to remove them during the tenancy, the same rule ought to, and does apply, when, by permission of the landlord, even without a formal renewal or extension of the lease, he continues to remain on the premises for a definite or indefinite term. During such period, in the absence of any agreement to the contrary, his intention as to his fixtures remains unchanged, and his right to remove them is unaffected by his holding over.' "

The relations of landlord and tenant, with respect to fixtures, must not be confused with the relations that may exist between vendor and vendee or mortgagee and a mortgagor's conditional vendor: cf. *Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321; *Central Lithograph Co. v. Eatmor Chocolate Co.,* 316 Pa. 300, 175 A. 697. The tenant, by attaching his chattel to the freehold, makes it part of the freehold; it becomes subject to a contract between owner and tenant that the tenant may detach it from the freehold during or at the expiration of the term; the mere fact of attachment does not determine whether it belongs to the owner of the fee or to the tenant; ownership depends on the manner of attachment and on the agreement of the parties, express or implied.

The three-story building had formerly been owned by a partnership known as Kaplan Brothers & Co.,[1] who occupied the first and third floors for the purposes of their clothing business. In 1925 they demised the second floor to a tenant, described in the record as Brandt & Kaplan, (composed of Michael Brandt and Nathan Kaplan) by a lease not in the record and said to have been lost, for the purpose of conducting a pool room and bowling alley. At that time the second floor was vacant, the building having just been completed. The tenant purchased certain bowling alleys and billiard tables

---

[1] We understand that Max Kaplan, one of defendants, was a member of the partnership.

from Brunswick, etc., Co., on a bailment lease which were installed in the leasehold. As part of the transaction, it was agreed by the landlord, Kaplan Brothers & Co., and the Brunswick, etc., Co.,[2] that if the tenant defaulted in paying the balance due on them, and the Brunswick, etc., Co., terminated the bailment lease, the Brunswick, etc., Co., would "sell and assign to the said Kaplan Bros & Company the articles to be installed under the terms of the said lease in consideration of the payment to it, by the said owner, of any amount that may be due at the time of any default by the said Brandt & Kaplan." We must assume for the purposes of the case that the tenant paid the amount due. We are not advised what became of the tenancy of Brandt & Kaplan.

In 1929 title to the fee passed from the partnership to Max Kaplan (who had been one of the partners) and Samuel Rosenthal, who, at the same time mortgaged it to the plaintiff. From a remark of defendants' counsel contained in the record, we understand that the foreclosure took place in 1936.

Has the originally reserved right of the tenant to remove the bowling alleys been affected by the foreclosure sale? We think the change in freehold ownership from Kaplan Brothers & Co. to Max Kaplan and Samuel Rosenthal has not affected the question; that for present purposes they stand in the place of their grantors. We also think that when the change in tenancy from Brandt & Kaplan to the defendants is examined, in the light of the record, the defendant tenants have the right to remove which Brandt & Kaplan had.

The first lease printed in the record is dated April 1, 1932; by it Max Kaplan and Samuel Rosenthal demised to "Mike Brandt, t/a Lackawanna Recreation Co. . . . Second floor of building located at 221-3 Lackawanna Ave., Scranton, Pa., to be used as a bowling alley, for

---

[2] An unexecuted form of that agreement is printed in the record but the chancellor found that it had been executed.

the term of twelve months, beginning on the 1st day of April, 1932. . . . ." Under *Radey v. McCurdy*, 209 Pa. 306, 58 A. 558, quoted above, the right to remove the bowling alleys as trade fixtures remained in Michael Brandt, successor to Brandt & Kaplan. He seems to have defaulted, as the next thing we find in the record is that, pursuant to a landlord's warrant issued at the instance of Max Kaplan and Samuel Rosenthal on October 27, 1932, a constable sold "the right, title and interest of said Michael Brandt and Lackawanna Recreation Company in the said personal property . . . to Max Kaplan for the aggregated sum of Three hundred ninety Dollars ($390.00)." The learned chancellor said "that the bowling alleys in question were severable from the freehold without material injury thereto to the building itself. . . ." A list of the property sold included the seven bowling alleys. Max Kaplan, it will be recalled, was one of the owners of the fee.

Prior to Brandt's default, he might have exercised his right to detach and remove the alleys. Not having removed them, and his interest[3] having been sold to Max Kaplan, Kaplan, as co-owner of the freehold, might thereafter have treated them as part of it. But instead of doing that, Kaplan, on March 8, 1933, sold his right, title and interest to the property purchased at the constable's sale (and specifying the bowling alleys) to Monas Rosenthal for $1; apparently this was done with the acquiescence of the other freehold owner Samuel Rosenthal.

The next fact shown is that by lease dated April 1, 1933, Samuel Rosenthal and Max Kaplan demised to Monas Rosenthal the second floor described as "now used as a bowling and billiard room known as the Lackawanna Recreation Parlors." The meaning of this

---

[3] Compare *Furbush v. Chappell*, 105 Pa. 187, 190; *Spencer v. Darlington*, 74 Pa. 286, 294; *Thropp's Appeal*, 70 Pa. 395, 400; *McKim v. Burke*, 57 Pa. Superior Ct. 530.

lease, as to the term, is not quite clear. It stated "The party of the second part [Monas Rosenthal] is given the privilege of renewing this lease yearly for a period of five years. The party of the second part has the privilege of subletting the premises or cancelling this lease for the term of one year from the 1st day of April, 1933 at the rent of twelve hundred ($1200.00) dollars. . . ." By lease dated April 1, 1934, Monas Rosenthal demised to Marie Nebesky, the second floor "now used as a bowling and billiard room known as the Lackawanna Recreation Parlors." This lease appears to be for the term of one year with "the privilege of renewing this lease yearly for a period of five (5) years." It specifies that it includes "the free and uninterrupted use and occupancy of the seven (7) bowling alleys now located on the premises, together with ten (10) pool and billiard tables, together with [other property inventoried]."

By another lease dated April 1, 1935, Monas Rosenthal demised to Marie Nebesky the same premises for the term of one year. The record does not show at what time in 1936 the foreclosure took place, whether during Marie Nebesky's term or after it expired. We have, however, the averment in the bill, admitted in the answer, that the defendants, Max Kaplan and M. Rosenthal, were the tenants who threatened to remove the bowling alleys. We do not know whether the pleader meant that Max Kaplan was the tenant of the first and third floors and M. Rosenthal of the second, or that they were co-lessees of the pool room and bowling alleys, and must therefore assume that the exact fact, so far as plaintiff's case is concerned, is not material to the question raised. As the leases were made after the mortgage was recorded, they were of course subject to its lien, and the foreclosure ended the tenants' term unless the purchaser elected to accept them. But as it appears, following the constable's sale to Kaplan of Brandt's interest in the fixtures, that M. Rosenthal, who then came in, did so in circumstances vesting in him as tenant the

right to treat the bowling alleys as trade fixtures, with the privilege of removing them at the expiration of the term, he was entitled to do so when the term was ended by the foreclosure sale, no default on the part of the tenant appearing: see *Bank v. North,* 160 Pa. 303, 312, 28 A. 694; *Harmony Building Association v. Berger,* 99 Pa. 320; *American L. M. Co. v. Miners Trust Co.,* 307 Pa. 395, 161 A. 306.

Decree affirmed at appellant's costs.