Peoples-Pittsburgh Trust Company, Appellant, *v.* Security Peoples Trust Company et al.

Argued May 5, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Eugene B. Strassburger*, with him *E. J. McKenna*, of *Strassburger & McKenna*, for appellant.

*Henry A. MacDonald*, with him *Charles A. Woods, Jr.* and *Dickie, Robinson & McCamey*, for appellee.

OPINION BY RHODES, J., September 28, 1938:

Plaintiff filed this bill in equity praying for a decree restraining and enjoining defendants from impairing the security of plaintiff's mortgage on the premises of St. George's Lithuanian National Catholic Church by removing therefrom a certain pipe organ, and that the sheriff of Allegheny County, in whose custody said organ was at the time the bill was filed, be directed to redeliver said organ to St. George's Lithuanian National Catholic Church. The matter was heard by the chancellor upon an agreed statement of facts, following which a decree nisi was entered dismissing the bill. Plaintiff's exceptions having been dismissed by the court in banc, it has appealed from the final decree.

From the agreed statement of facts adopted by the chancellor as his findings of fact, it appears that on February 21, 1917, the Most Rev. Evdokim Meschersky, Archbishop of the Russian Orthodox Greek Catholic Church of North America and the Aleutian Islands, and his successors in office, in trust for Sts. Peter and Paul Russian Orthodox Greek Catholic Church of Pittsburgh, Pa., made and executed to the All Nations Deposit Bank of Pittsburgh his bond securing the payment of $12,000 within three years from the date thereof. Said bond was secured by a mortgage bearing the same date, covering certain real estate in the city of Pittsburgh at the southeast corner of South Nineteenth Street and Carey Alley. On March 10, 1930, the All Nations Deposit Bank assigned said mortgage to the Peoples Trust Company of Pittsburgh, which later, by merger, became Peoples-Pittsburgh Trust Company, plaintiff herein. At the time this bill was filed, there was still due on this mortgage the sum of $11,000 with interest from February 1, 1936. On December 15, 1923, St. George's Lithuanian National Catholic Church, a corporation, became the owner of the mortgaged premises. In October, 1928, St. George's Lithuanian National Catholic Church decided to acquire a larger organ, and entered into a contract with the Tellers-Kent Organ Company for the purchase of such organ, known and specified as a pipe organ, at a total cost of $6,025. This organ was placed in the rear of the church auditorium on a balcony built especially to receive it; the organ being 16 feet wide, 6 feet deep, and the woodwork enclosing it being 10½ feet high, the height being increased by display pipes to 15 feet at the middle of the organ. The organ rested by its own weight upon the floor of the balcony. The cabinet of the organ was fastened to the back wall by 4 screws and 10 nails, and various parts of the organ were fastened to the floor of the balcony by 14 screws. The specifications provided that the front case of the organ was to conform in de-

sign to the general architecture of the church. In instal-
ling the organ it was necessary to make three holes in
the floor of the balcony, two of which were 3 inches in
diameter. The third hole, which was 10 inches in diam-
eter, was for the accommodation of the pipe which con-
ducted the air from the blower on the ground floor of
the church into the organ chamber. The electric blower
was supplied by the organ builder, but the blow pipe
leading from the blower to the organ chamber through
the ten-inch hole in the balcony was installed by the
church. The blower itself was placed upon the first floor
of the church and kept in place by its own weight; the
first floor being used as a gymnasium or social room,
and the church auditorium being located on the second
floor. The entire organ was installed by bringing neces-
sary parts thereof through the doors of the church as
they now exist, and it would not be necessary to make
any openings of any kind in the wall of the church to
remove any part of the organ. Prior to the installation
of this larger organ, the church services were conducted
with a smaller foot-operated organ, which is now located
in the adjoining church house.

The organ was sold under a sales agreement, reserving
title in the vendor until the organ was paid for in full.
The vendor failed to file the sales agreement in the office
of the Prothonotary of Allegheny County within ten
days after it was made, and failed to refile said agree-
ment within thirty days prior to the expiration of three
years thereafter. The vendor also failed to file a descrip-
tion of the real estate upon which the organ was to be
placed. Payments under the conditional sales agreement
became in default, whereupon Security Peoples Trust
Company, assignee of Tellers-Kent Organ Company, the
conditional vendor, instituted replevin proceedings for
the organ in May, 1936. Neither the All Nations Deposit
Bank, nor the Peoples Trust Company of Pittsburgh,
nor the Peoples-Pittsburgh Trust Company had any no-

tice or knowledge of the conditional sales agreement until notice thereof was given to Peoples-Pittsburgh Trust Company, plaintiff herein, on May 18, 1936.

When plaintiff learned of the replevin proceedings this bill in equity was filed.

The chancellor decided that the organ was not a part of the realty; that it was intended to remain personalty under the sales agreement; that it was removable without disturbing or materially injuring the property to which it was annexed; and that its removal would not materially injure the operation of the activities of the church.

Appellant's main contention is that the organ became, when installed in the church, a part of the freehold, on the principle laid down in *Central Lithograph Co. v. Eatmor Chocolate Co. (No. 1)*, 316 Pa. 300, 175 A. 697.

The facts clearly support the conclusion of the chancellor that the organ was removable without any material injury to the freehold in the physical sense, and that it was the intention of the vendor and the vendee that it remain personalty. Appellant does not attempt to indicate wherein the facts are inadequate to support these conclusions of the chancellor.

Appellant's mortgage on the church property was made in 1917. The organ was placed in the church in 1928. It follows that if the organ was personal property and not part of the freehold it was removable as to appellant, and failure to record the sales agreement is immaterial. See Act of May 12, 1925, P. L. 603, No. 325, §7, as amended, Act of May 12, 1927, P. L. 979, §2 (69 PS §404).

The organ could be removed without physical injury to it or to the church building, and it was not made a part of the realty by agreement of vendor and vendee. It remains to be determined whether its removal would result in a "material injury to the freehold," as it is interpreted in *Central Lithograph Co. v. Eatmor Choco-*

*late Co.,* supra. In this connection it is argued on behalf of appellant that the organ was part of the equipment required for holding religious services, and thus became a component part of the church building. We do not think that the removal of the organ would impair the integrity of the church as the removal of machinery from a manufacturing establishment would impair the integrity of the plant. The facts justify the conclusion that the organ was not indispensable or a component part of the church. It is true that if the machinery were removed from a manufactory there would remain but an empty shell; but the church building was erected as a place for religious worship, and not to house this organ. Its removal would result in no material injury to the functioning of the church as such. We are not persuaded by the argument of appellant that the organ is as essential in connection with the conduct of this church as machinery is in a manufactory, or a furnace in a dwelling as held in *Holland Furnace Co. v. Suzik et ux.,* 118 Pa. Superior Ct. 405, 180 A. 38. It does not appear from the record that music from this organ is a requisite to church services or activities. Certainly the removal of the present organ will not deprive the church building of its *raison d'etre* as in the case of removing machinery from an industrial plant. Moreover, there is nothing to show that music is a *sine qua non* in the rites of the religious organization concerned. It is true, as appellant contends, that the exterior of the organ was to conform in design to the general architecture of the church, but this of itself would not make the organ a part of the realty. Nor does it appear that its removal would destroy the symmetry of the interior of the building. Naturally the church authorities would endeavor to avoid incongruity when the instrument was installed. The removal of this musical instrument will not impair the use of the church building as a place for religious worship. Without this organ the church will continue

to be such a place as it was for years before the organ was installed. This organ is not in the same category as the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all. See *Voorhis v. Freeman*, 2 Watts & S. 116, 117.

*Holland Furnace Co. v. Suzik et ux.*, supra, is cited by appellant in support of its contention that the organ was such a fixture that when attached it became a part of the realty. The Holland case is distinguishable and is not here controlling, as is readily seen from the following quotation from the opinion of Judge BALDRIGE, p. 409: "Although this furnace might have been removed without serious injury to either the furnace or the house, its removal would have completely destroyed the heating system [a component part of the building]. . . . . . This furnace was of a permanent character. It rested on a cement floor and parts of it were sealed together by cement, and for two and a half years it had been in a home, the ownership of which had changed three times in that period before any question of title was raised by the conditional sale vendor. We think it is now too late to give the property, by words in a sale contract, a nature which, in fact, it did not possess."

We think the matter was correctly decided by the chancellor, and the bill in equity filed by the appellant, holder of the mortgage on the church property, was properly dismissed.

Assignments of error are overruled. The decree is affirmed, at the cost of appellant.