## Cattie, Appellant, *v.* Joseph P. Cattie & Brothers, Inc.

Argued January 12, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*John R. McConnell,* with him *Morgan, Lewis & Bockius,* for appellants.

*Charles A. Wolfe,* with him *Sidney L. Wickenhaver, Joseph B. Quinn,* and *Montgomery, McCracken, Walker & Rhoads,* for appellee.

OPINION BY MR. JUSTICE BELL, March 13, 1961:

Appellants, representing the estate of Joseph P. Cattie, Sr., the original lessor, brought an action in trespass against the defendant-corporation, lessee, for the value of machinery and equipment removed by the lessee after the termination of the lease between Cattie and the corporation. At the conclusion of the jury trial the Court below directed a verdict for the corporation. After plaintiffs' motion for a new trial was dismissed, judgment was entered on the verdict and plaintiffs took this appeal.

On appeal from a directed verdict for the defendant we take the plaintiff's evidence as true, giving plaintiff the benefit of all favorable evidence and all reasonable inferences arising therefrom: *Thompson v. Gorman,* 366 Pa. 242, 246, 77 A. 2d 413; *Valera v. Reading Co.,* 349 Pa. 123, 124, 36 A. 2d 644.

Accepting plaintiff-appellants' evidence and all reasonable inferences therefrom the facts may be thus summarized: Cattie (the decedent) and his two brothers each owned one-third of the stock of the defendant-corporation, of which Cattie was the president and active manager. The corporation occupied certain land and buildings at the northwest corner of Gaul and Letterly Streets in Philadelphia. The land and buildings were owned by Cattie until his death on July 3, 1950, and had been leased to the corporation since January 1, 1921, under various written leases. After Cattie's death the corporation continued in possession of the premises until December 21, 1951, at which time the lease was terminated on notice from the present appellants. At that time the machinery and equipment which are the subject of this lawsuit were removed

from the building by the corporation. Among the equipment removed was a craneway (which is in the nature of a track approximately 20 feet high) which rested upon columns embedded in a concrete foundation on the floor and a tram rail system (similar to the craneway but consisting of a single railed track running throughout the building) which was supported by cross beams embedded in the walls of the building. It is conceded by plaintiffs (as well as by defendants) that the craneway and the tram rail system were fixtures.

In order to remove the craneway and the tram system from the building, it was necessary to cut them up with acetylene torches and remove them piece by piece. The equipment was thus totally destroyed and was sold for scrap. The value of this equipment just before its destruction was estimated to be in excess of $69,200. The corporation sold the metal as scrap for $10,414.02.

Appellants claim the value of the equipment and machinery before its destruction and sale, namely, $69,-200 (as well as the value of certain other machinery which is presently irrelevant).

The question raised by this appeal is whether the equipment at the time of its removal was the property of the defendant-lessee-corporation or of the plaintiffs-lessor-appellants. As between landlord and tenant the rule is well settled in Pennsylvania that where a tenant attaches to real estate fixtures and equipment necessary for the operation of its business, such items become "trade fixtures", and a presumption arises that the tenant is entitled to remove them during or at the termination of its lease: *First National Bank v. Reese*, 356 Pa. 175, 51 A. 2d 806; *Prudential Insurance Co. v. Kaplan*, 330 Pa. 33, 198 A. 68. At the trial appellants admitted that the machinery and the aforesaid equipment were installed by the defendant-lessee-

corporation at its "sole" expense for use in its business operations. It is also clearly settled that "The same sound policy of the law which favors a tenant in the matter of the removal of trade fixtures, requires that in the construction of an agreement containing words whose meaning is doubtful, the construction of the words most favorable to the tenant shall prevail. *Nothing short of the clearest expression of an agreement by the parties to that effect,** can justify the extension of the grasp of the landlord so as to cover chattels, or personal property brought upon the premises by the tenant, in pursuance of the business for which the premises were leased:" *Lindsay Bros., Inc. v. Curtis Publishing Co.,* 236 Pa. 229, 234, 84 A. 783. Cf. *McClintock & Irvine Co. v. Aetna Explosives Co.,* 260 Pa. 191, 103 A. 622.

In the present case the written leases between Cattie and the corporation *made no mention* of these fixtures. Likewise, appellants have not offered any evidence to support their claim or to rebut the presumption that the tenant was entitled to remove the fixtures. On the contrary, Joseph P. Cattie, *Jr.,* one of the appellants, testified that on November 19, 1951, on behalf of his Father's estate, he had offered the corporation $20,000 for the equipment in question in order *"to leave it in the* [father's] *estate."* From the lack of evidence to rebut the presumption on the one hand and appellants' admissions on the other hand, it is evident that the trial Court committed no error in directing a verdict for the defendant-lessee-corporation.

However, appellants also contend that the trial Court committed error by refusing certain offers of evidence. By these offers appellants sought to prove that Cattie (lessor) had received less than the fair

---

* Italics throughout, ours.

rental value of the leased property and that Cattie's brother had been paid a substantial salary for services during a time when he was unable to work. Even if this irrelevant evidence had been admitted, it would not be adequate to prove an intent by Cattie and the corporation that the fixtures were to become a part of the real estate.

Judgment affirmed.