## Virginia Lots Corporation v. The Escape Inc.

*Kenneth Joseph,* for plaintiffs.
*John McHugh,* for defendant.

*Robert Tuerk,* for petitioner.
*Jay R. Rose,* for Sheriff of Pike County.

THOMSON, *P.J.,* August 4, 1994—This case arises out of an appeal by the petitioners, Public Service Water Company, MPW Utilities Inc., Upland Water Company, and Upland Sewer Company, to this court's decision on December 14, 1993, which denied their objections and exceptions to the confirmation of sale of petitioners' property included in the sheriff's sale.

There is a long and convoluted procedural background to this entire matter. On February 7, 1992, a confession of judgment was filed against the defendant, The Escape Inc., and in favor of the plaintiff, Virginia Lots Corporation. On August 21, 1992, a praecipe to issue writ of execution in the above matter was filed and directed to the Sheriff of Pike County to schedule, advertise, and sell defendant's interest in and to all that certain real property situated partly in the Township of Greene and partly in the Township of Palmyra, Pike County, Pennsylvania.

The property described in the exhibit attached to the praecipe to issue writ of execution is a portion of the property which was subject to a lien of two mortgages recorded on June 2, 1989 in the Pike County Recorder's office, one at record book 82, page 120 and the other at record book 82, page 135. A praecipe to re-issue the writ of execution was filed on June 9, 1993. The Sheriff of Pike County scheduled a sheriff's sale for September 22, 1993. However, on September 7, 1993, petitioners, Public Service Water Company, MPW Utilities Inc., Upland Water Company, and Upland Sewer Company, petitioned this court to stay the execution

against the property in this matter. The basis for their petition to stay the execution was that certain property described in the writ included property owned and operated by petitioners. After argument in this matter, this court by the order of September 21, 1993, denied the petitioners' petition for stay of execution.

Thereafter on October 8, 1993, the petitioners, Public Service Water Company, MPW Utilities Inc. Upland Water Company, and Upland Sewer Company, appealed to the Superior Court of Pennsylvania from the order striking and denying their petition for a stay of execution. On October 13, 1993, this court ordered the petitioner to file within 10 days a concise statement of matters complained of on appeal. On October 21, 1993, appellants petitioned Superior Court for a supersedeas. On the same day, they filed their concise statement of matters complained of on appeal.

On November 9, 1993, the petitioners filed objections and exceptions to the confirmation of sale of petitioners' personal property included in the sheriff's sale in this matter. Argument on the objections and exceptions was held December 9, 1993. On December 14, 1993 this court denied the petitioners' objections and exceptions to the confirmation of sale. From that order of the court filed December 21, 1993, the petitioners once again appealed, and said appeal is the matter currently before us.

Unfortunately, the procedural morass does not end there. On December 30, 1993, we directed the petitioners to file a concise statement of matters complained of on appeal. They complied and filed same on January 7, 1994. The respondent took issue to facts alleged

in the concise statement, and filed a counter-statement on January 13, 1994. There was confusion as to what order the petitioners had appealed from, as the letter from Superior Court asking for date certain of the order appealed from indicates. Finally, on March 4, 1994, the Superior Court filed a notice of appeal docketing. It was our understanding that this may have been evidence of yet another appeal having been made, and in the interest of clarification, on March 10, 1994 we directed the petitioners to file another concise statement of matters complained of on appeal. They did so on March 23, 1994, submitting an identical copy of the statement filed January 7, 1994. Adding further confusion to this matter, an order of Superior Court was filed March 14, 1994, dated February 4, 1994, quashing petitioner's appeal. It is our understanding that this matter is now ripe for our [Pa.R.A.P.] 1925 opinion.

In the confusion as to what order was being appealed from, petitioner's concise statement of matters complained of on appeal offered little assistance. A fortiori, it offers even less suggestion as to the bases for this. appeal. The petitioners' statement makes no allegations of error on the part of the trial court. Rather it sets forth matters that the petitioners argued before this court from which we were unconvinced. Essentially, their contention is that "their personalty/trade fixtures ... were erroneously included in the said sheriff's sale in this matter." See petitioners' concise statement of matters complained of on appeal, section 2B.

The heart of petitioners' argument is that the property, namely, the central water system and central sewage system operated by the petitioners, should not have been levied upon pursuant to a writ of execution in-

asmuch as it is "tangible personal property." See Pa.R.C.P. 3202(a).

This argument is tenable only by a false characterization of the property in question as "trade fixtures," and therefore personal property. This, we would not countenance.

Ordinarily, that which is in its nature otherwise personal, when physically or constructively attached by its use or intended use, to the soil, becomes a part of the realty. 63A Am.Jur.2d, Property §18. Furthermore, in deciding whether property is real or personal, the manner in which it is affixed to the land and the permanence with which it was designed to remain in place must be considered. 63A Am.Jur.2d, Property §18. The principal factors that Pennsylvania courts have used to determine whether a chattel is a fixture when affixed to the land are: the manner in which it is physically attached or installed, the extent to which it is essential to the permanent and ongoing use of the land and its other improvements, and the intentions of the parties who installed or attached it. *Peterson v. Philadelphia Housing Authority,* 154 Pa. Commw. 309, 623 A.2d 904 (1993); *Gore v. Bethlehem Area School District,* 113 Pa. Commw. 394, 537 A.2d 913 (1988), *appeal denied,* 519 Pa. 656, 546 A.2d 60 (1988).

Of these, the paramount consideration is the intention of the party placing the chattel on the realty. P.L.E. Fixtures §1. *Kinnear v. Scenic Railways Co. of America,* 223 Pa. 390, 72 A. 808 (1909); *McCarthy v. Bank,* 283 Pa. Super. 328, 423 A.2d 1280 (1980). Intentions can be determined from "objective manifestations." *McCright v. Mercer County Area Vo-Tech. School,* 30

D.&C.3d 495, 504 (1982). In addition, it may be inferred from the nature of the article annexed, the status of the party making the annexation, and the purpose or use of the chattel annexed. *Canon-McMillan School District v. Bioni,* 110 Pa. Commw. 584, 533 A.2d 179 (1987), *appeal denied,* 520 Pa. 608, 553 A.2d 970 (1988), *remanded,* 521 Pa. 299, 555 A.2d 901 (1989), *on remand,* 127 Pa. Commw. 317, 561 A.2d 853 (1989).

Applying these considerations to the facts, we found that clearly a central water system and central sewage system were realty. It is affixed to the land and of the most permanent nature. These systems were intended to be stationary, and remain so, throughout their useful lives. They are imbedded in the land, and dependent upon it for support. They were actually and permanently fastened to the freehold, and could not readily be detached. Overall, the incorporation of these systems to the land were such that we could come to no other conclusion but that they were to be considered part of the real property.

Surprisingly, we found little case support on point. We are confirmed in our reasoning though, by *Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321 (1933). There, the Pennsylvania Supreme Court held that as a general proposition, chattels so annexed to the realty that they cannot be removed without material injury to the realty or to themselves, are realty. In that case, the property was a water sprinkler system. Clearly, the complexities of a modern water and sewerage system, with its intricate mains and piping, are far more intimately bound with the land, than a 1930s automatic water sprinkler.

If this were not enough to find for the respondents, we were likewise unconvinced by petitioners' allegation

448

that the systems were "trade fixtures." There is a long line of cases holding that "trade fixtures" are only recognized in the lessor/lessee arrangement. See generally, *Berry v. Heinel Motors,* 162 Pa. Super. 52, 56 A.2d 374 (1948); *Borys v. Mazzoni,* 62 Lacka. Jur. 21 (1961); *In re Mount Holly Paper Co.* 110 F.2d 220, (1940); *Brandt v. Koppelman,* 169 Pa. Super. 236, 82 A.2d 660 (1951). In that arrangement, a lessee brings fixtures and equipment to an existing structure, and affixes them thereto. Such materials are necessary for the operation of the business. *Cattie v. Joseph P. Cattie & Brothers Inc.* 403 Pa. 161, 168 A.2d 313 (1961). We do not have that case here. The petitioners are not tenants. They neither installed the systems nor intended to remove them after a term of years. Accordingly, the characterization of the systems as "trade fixtures" is in error.

For the foregoing reasons set forth herein, we believe that the water and sewage systems were rightly included in that property sold at the sheriff's sale held on November 3, 1993.