684 A.2d 618

**C. Ernest LEHMANN**

v.

**David KELLER and Edna Keller, Appellants.**

Superior Court of Pennsylvania.

Argued June 25, 1996.

Filed Oct. 21, 1996.

---

44

James C. Blackman, Warren, for appellants.

H. Robert Hampson, Warren, for appellees.

Before CAVANAUGH, JOHNSON and CERCONE, JJ.

JOHNSON, Judge:

David and Edna Keller appeal from the order declaring C. Ernest Lehmann the owner of certain oil and gas property and enjoining the Kellers from interfering with Lehmann's use of this property. Our principal task in this Opinion is to determine what possessory rights the lease of oil and gas wells creates in the derricks, casings and other pumping equipment attached to the wells at the time the wells are leased. We must also determine whether the lessee can acquire title to the leased wells and the attached equipment through adverse possession.

We conclude that a leasehold interest may not ripen into title through adverse possession because the lessee's possession is consensual. We further conclude that possessory rights to the attached equipment are governed by the law of fixtures. Items of equipment that constitute fixtures are part of the leasehold estate; thus the parties' interests in the fixtures are identical to their interests in the leasehold estate. Because we cannot conclude, based on this record, whether the disputed equipment constitutes fixtures or personalty, we

remand this matter for further proceedings consistent with this Opinion.

On May 9, 1974, Edna Keller (then Edna Lehmann) executed and delivered to her brother, C. Ernest Lehmann, a lease granting him the right to drill for oil and gas on certain property that Edna had inherited from their father. At the time of the conveyance, there were twelve oil and gas wells existing on Edna's property. Each of those wells was rigged with equipment for pumping.

The lease provided, in pertinent part, that Edna would "grant, demise and let unto [Lehmann] all the oil and gas in, and under [her property]; also the said tract of land for purpose of operating thereon for said oil and gas..., and all rights convenient for such operations." Lease, attached to Lehmann's Complaint in Equity, Docket Entry No. 7. Lehmann paid one dollar in consideration of the lease and promised to deliver to Edna, throughout the duration of the lease, ⅛ of all oil produced, ⅛ of all gas revenues and a free supply of gas for domestic use. The parties' rights regarding the derricks, casings and other equipment attached to the wells at the time of the conveyance were not addressed in the agreement. The term of the lease was for one year "and as much longer as oil or gas can be produced in paying quantities." *Id.*

After the conveyance, Lehmann operated two of the existing wells and drilled nineteen new wells. He used the equipment that was in place prior to the conveyance to pump the two older wells. The remaining ten old wells were either plugged or left dormant.

From 1974 until 1990, the relationship between the parties was amicable. In 1990, however, Lehmann's relationship with Edna and her husband, David Keller, deteriorated and David began interfering with Lehmann's use of the leased property. David attempted to physically obstruct Lehmann's access to the wells by placing an old truck on a road that led to the leased property. Lehmann also testified that David tried to intimidate him by brandishing a gun while Lehmann was inspecting the wells. N.T., dated December 5, 1995, at 17.

David's conduct continued for several years and, in 1995, Lehmann sued to enjoin the Kellers from interfering with his rights under the lease and to establish his possessory rights to the leased property.

At trial, the Kellers argued that the oil and gas equipment that was attached to the twelve old wells at the time of the conveyance was their personal property and that they had the right to remove this equipment from the wells. The trial court disagreed and granted Lehmann's request for an injunction. The court further concluded that Lehmann had acquired title to the old wells and the disputed equipment through adverse possession, basing its conclusion upon his twenty-one years of continuous possession and operation of the wells. We affirm the portion of the trial court's order enjoining the Kellers from interfering with Lehmann's operation of the wells. The Kellers' conduct hindered Lehmann's ability to operate the wells, making an injunction the appropriate remedy. We disagree, however, with the court's holding that title to the old wells and the disputed equipment vested in Lehmann.

A person can acquire title by adverse possession only where he can prove "actual, continuous, visible, notorious, distinct and *hostile* possession of the land for twenty-one years." *Tioga Coal v. Supermarkets General Corp.*, 519 Pa. 66, 71, 546 A.2d 1, 2 (1988) (emphasis added), quoting *Conneaut Lake Park, Inc. v. Klingensmith,* 362 Pa. 592, 594–95, 66 A.2d 828, 829 (1949). Possession is hostile when the person claiming adverse possession enters and remains on the land without the permission of the true owner. *See Tioga Coal, supra,* at 72, 546 A.2d at 4–5. When possession of the land is permissive, there is no hostile nexus and, thus, no adverse possession. *Plott v. Cole,* 377 Pa.Super. 585, 597, 547 A.2d 1216, 1223 (1988) ("[W]ith the consent of the owner, possession cannot ripen into title by the mere lapse of time."). In the instant case, Lehmann has occupied the land and pumped the wells pursuant to his lease with Edna. The lease constitutes Edna's permission for Lehmann to use the land; his occupan-

cy is not hostile, and there can thus be no adverse possession. *See Moser v. Granquist,* 362 Pa. 302, 304–05, 66 A.2d 267, 268 (1949) ("Where the possession ... is permissive the statute will not begin to run against the real owner until there has been some subsequent act of disseizin [sic]...."). Accordingly, we reverse that portion of the trial court's order which concluded that Lehmann's possession of the wells and equipment under the lease had ripened into title through adverse possession.

Having concluded that Lehmann did not acquire title to the disputed property through adverse possession, we next consider what the parties' possessory rights are in the derricks, casings and other equipment attached to the land at the time of the conveyance. We remand for further proceedings on this question.

■ Possessory rights regarding chattels that are attached to leased realty are determined by classifying the chattels as either fixtures or personal property. *See Clayton v. Lienhard,* 312 Pa. 433, 436–37, 167 A. 321, 322 (1933). "A fixture is an article ... of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land." *Smith v. Weaver,* 445 Pa.Super. 461, 467, 665 A.2d 1215, 1218 (1995). When a fixture is attached to leased property by the lessor, the fixture becomes part of the leasehold estate and cannot be removed during the duration of the lease. *See* 36A C.J.S. *Fixtures* § 33 (1961). Chattels that remain personal property, however, are not part of the leasehold and can be freely removed by their owner. *See Peoples–Pittsburgh Trust Co. v. Security Peoples Trust Co.,* 133 Pa.Super. 18, 23–24, 1 A.2d 520, 522 (1938).

■ Items of equipment attached to oil and gas wells have traditionally been classified as trade fixtures. *Prudential Insurance Company of America v. Kaplan,* 330 Pa. 33, 34–35, 198 A. 68, 69 (1938). Under Pennsylvania law, there is a strong presumption that trade fixtures installed by a *lessee* remain the lessee's personal property. *E.g., Willison v. Consolidation Coal Co.,* 536 Pa. 49, 53, 637 A.2d 979, 982 (1993);

*Black v. Hoffman,* 324 Pa. 193, 198, 188 A. 149, 151 (1936). This rule is premised on the notion that lessees install trade fixtures for their own benefit and do not intend for the chattels to become part of the real estate. *See Cattie v. Joseph P. Cattie & Brothers, Inc.,* 403 Pa. 161, 164, 168 A.2d 313, 314 (1961). Lehmann argues that the trade fixture rule should be applied in this case to determine the ownership of the disputed oil and gas equipment. We disagree. The trade fixture rule is not implicated here because the disputed equipment was installed by the *lessor.* We conclude that general fixture principles, rather than the trade fixture rule, should determine the parties' rights to chattels which are affixed to a leasehold estate by the lessor.

■ Chattels used in connection with real estate can fall into one of three categories. *Clayton v. Lienhard, supra,* at 436, 167 A. at 322. First, chattels that are not physically attached to realty are always personalty. *Id.* Second, chattels which are annexed to realty in such a manner that they cannot be removed without materially damaging either the realty or the chattels are always fixtures. *Id.* at 436–37, 167 A. at 322. The third category consists of those chattels that are physically connected to the real estate but can be removed without material injury to either the land or the chattels. *Id.* at 437, 167 A. at 322. When a chattel falls into the third category, its status as a fixture or as personalty depends upon the "objective intent of the [owner] to permanently incorporate [the] chattel into real property, as evidenced by the proven facts and surrounding circumstances entered into evidence." *Noll v. Harrisburg Area YMCA,* 537 Pa. 274, 288, 643 A.2d 81, 88 (1994). Because the facts were not sufficiently developed at trial to allow us to conclude whether the disputed equipment constitutes fixtures or chattels, we are constrained to remand.

On remand, the trial court must first determine which of the three categories includes the disputed equipment. Category one is eliminated in this case because the equipment is physically attached to the wells. Thus, the trial court must determine whether or not the removal of the equipment would materially damage either the equipment or the wells. If the

answer to this question is yes, then the equipment is in category two and constitutes fixtures. If the court answers this question in the negative, then the equipment falls into category three.

 If the court concludes that the equipment belongs in the third category, then the required inquiry is whether Edna manifested an intent at the time of the conveyance to treat the equipment as part of the land to which it is attached. We emphasize that her intent must be determined on an objective basis. As the supreme court stated in *Noll, supra,* " 'it is not so much what a particular party intended his legal rights to be, as it is what intended use of the property was manifested by the conduct of the party.' ". *Id.* at 288, 643 A.2d at 88, quoting George B. Clothier, "The Law of Fixtures in Pennsylvania," 32 Pa. Bar Quarterly 66, 66–67 (1960). Factors the court may consider in making this determination include: (1) the length of time which the chattels have been attached to the realty, *Noll, supra,* at 289, 643 A.2d at 88; (2) whether the chattels are essential to the purpose for which the realty is used, *id.;* and (3) whether the parties to the lease treated the chattels as part of the leasehold estate. *See Royal Store Fixture Co. v. Patten,* 183 Pa.Super. 249, 254, 130 A.2d 271, 274 (1957). These factors, of course, are not exclusive; the court may consider any other objective manifestations of Edna's intent. *See Noll, supra,* at 288–89, 643 A.2d at 88.

Based upon the foregoing analysis, we conclude that this case must be remanded for further proceedings consistent with this Opinion.

Order **AFFIRMED** in part, **REVERSED** and **REMANDED** in part. Jurisdiction **RELINQUISHED.**